Electronically FILED by Superior Court of California, County of Los Angeles on 12/31/2019 10:48 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
19STCV46903
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Richard Burdge

1  Robert D. Brugge, Bar No. 92532
   rdb@kpclegal.com
2  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
3  Glendale, California 91203-1922
   Telephone: (818) 547-5000
4  Facsimile: (818) 547-5329

5  Attorneys for Plaintiff
   State Farm Mutual Automobile Insurance Company
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF LOS ANGELES

10

11 STATE FARM MUTUAL AUTOMOBILE          ) NO.   19STCV46903
   INSURANCE COMPANY, a Illinois         )
12 corporation,                          ) COMPLAINT FOR DECLARATORY
                                         ) RELIEF
13              Plaintiff,               )
                                         )
14     v.                                )
                                         )
15 PENSKE TRUCK LEASING CO., L.P., a     )
   Delaware Limited Partnership; MELBA   )
16 FERNANDEZ; OLD REPUBLIC               )
   INSURANCE COMPANY, a Pennsylvania     )
17 Corporation; and DOES 1 through 20,   )
   inclusive,                            )
18                                       )
                Defendants.              )
19 _____)

20     Plaintiff State Farm Mutual Automobile Insurance Company, a corporation, and

21 hereinafter sometimes referred to as "State Farm" or as "plaintiff," alleges against

22 defendants referred to in the caption, and each of them, as follows:

23     1.     Plaintiff State Farm Mutual Automobile Insurance Company was and is at all

24 times material herein a corporation authorized to do and is doing business in the State of

25 California and Los Angeles County, as an automobile liability insurer.

26     2.     Plaintiff State Farm is informed and believes and thereon alleges that

27 defendant Penske Truck Leasing Co., L.P. is a Delaware Limited Partnership, and

28 hereinafter sometimes referred to as "Penske" or as "defendant," is a business entity

KNAPP,
PETERSEN
& CLARKE

                              -1-

Exhibit 1
06

1  authorized to do and is doing business in the State of California and the County of Los

2  Angeles.

3       3.      Plaintiff State Farm is informed and believes and thereon alleges that

4  defendant Melba Fernandez is a resident of Los Angeles County and that she has asserted a

5  claim under the State Farm policy and against Penske Truck Leasing Co., L.P., and others.

6       4.      Plaintiff State Farm is informed and believes and thereon alleges that

7  defendant Old Republic Insurance Company is a Pennsylvania corporation, and hereinafter

8  sometimes referred to as "Old Republic" or as "defendant," is a business entity authorized

9  to do and is doing business in the State of California and Los Angeles County, as an

10 automobile liability insurer.

11      5.      The true names, identities and capacities of Does 1 through 20, inclusive, are

12 presently unknown to plaintiff State Farm. Therefore, plaintiff sues these defendants by

13 such fictitious names. When plaintiff has learned the true names, identities and capacities of

14 said defendants sued herein as Does 1 through 20, inclusive, plaintiff will amend the

15 complaint to set forth their true names, identities and capacities. Plaintiff is informed and

16 believes and, based upon this information and belief, alleges that the fictitiously named

17 defendants have a direct interest in this litigation by reason of one or more of the following:

18 1) the person or entity has made a claim for damages or insurance benefits against a person

19 or entity who may be insured by plaintiff State Farm or Defendant Old Republic; 2) the

20 person or entity against whom a claim is made that may be insured under a policy issued by

21 State Farm or Old Republic 3) is an insurer of a person against whom a claim has been

22 made or 4) is a person or entity that would be directly  affected by the  court's

23 determination of the issues sought to be adjudicated in this action.

24      6.      Plaintiff State Farm is informed and believes and thereon alleges that, on or

25 about May 5, 2017, each defendant was a resident of Los Angeles County or was engaged

26 in conduct or business in Los Angeles County which has given rise to an action for

27 damages presently on file in the Los Angeles County Superior Court, such action being

28 designated case number 19STCV12981. Attached hereto and labeled Exhibit A, for

KNAPP,
PETERSEN
& CLARKE

-2-
*COMPLAINT FOR DECLARATORY RELIEF*

**Exhibit 1
07**

1  informational purposes only, is a true and correct copy of the complaint in action number
2  19STCV12981. State Farm does not admit the truth of the allegations in the complaint in
3  action number 19STCV12981.

4       7.     Prior to May 5, 2017, State Farm Mutual Automobile Insurance Company
5  issued a policy of automobile liability insurance to L & L Logistics and Warehousing, Inc.,
6  as the named insured. The State Farm policy is designated policy number 460 3444-A15-
7  75A. The State Farm policy provides coverage for vehicles, other than the described vehicle
8  on the State Farm policy, on an excess basis in relation to other applicable liability
9  coverage. Attached hereto and labeled Exhibit B is a true and correct copy of the State
10  Farm policy issued to L & L Logistics and Warehousing, Inc., designated number 460
11  3444-A15-75A.

12       8.     State Farm is informed and believes and based on that information and belief
13  alleges that L & L Logistics and Warehousing, Inc., is a duly licensed motor carrier of
14  property in accordance with California Statutory Law and the Department of Motor Vehicle
15  Regulations

16       9.     State Farm is informed and believes that prior to May 5, 2017, defendant Old
17  Republic Insurance Company and Does 1 through 5 issued a policy of automobile liability
18  insurance to defendant Penske, covering Penske and other's for liability for bodily injury
19  and property damage arising out of the use of motor vehicles rented to others by Penske.

20       10.     On or about May 5, 2017, L & L Logistics and Warehousing, Inc., entered
21  into a commercial rental agreement with Penske wherein a commercial truck was rented
22  from Penske for use in the business of L & L Logistics and Warehousing, Inc. The rental
23  agreement referred to L & L Logistics and Warehousing, Inc. as L & L Trucking. Attached
24  hereto and labeled Exhibit C is a copy of the "Customer Copy" of the rental agreement
25  cover sheet which references said rental agreement number 59619290.

26       11.     Pursuant to the provisions of the rental agreement, L & L Logistics and
27  Warehousing, Inc., referred to in the rental agreement as L & L Trucking, was charged
28  $20.00 per day for "liability coverage/liability accident insurance" which is also referred to

**KNAPP,
PETERSEN
& CLARKE**

-3-
*COMPLAINT FOR DECLARATORY RELIEF*

3950381.1  00100/10772

**Exhibit 1
08**

1   in the agreement as "Penske Provides."

2       12.     Attached hereto and labeled Exhibit D is a copy of the Penske document

3   which states the following regarding a "commercial rental," which was the type of rental by

4   L & L Logistics and Warehousing, and which describes the liability coverage provided by

5   Penske when purchased by the renter. Regarding the coverage entitled "Penske Provides,"

6   the document states:

7
8       "1. Liability Insurance. Liability Insurance is required during the Rental. Customer may satisfy this requirement for Commercial Rentals by either electing the Penske provided Coverage or by providing its own coverage, subject to the requirements set forth herein. Customer's election of insurance will be noted on the Cover Sheet.

9
10
11          (i)  Penske Provides Coverage. If Customer elects Penske Liability Coverage, Penske agrees to provide liability protection for Customer and any Authorized Operator, and no others, subject to any limitations herein, in accordance with the standard provisions of a basic automobile liability insurance policy **as required in the jurisdiction in which the Vehicle is operated**, against liability for bodily injury, including death, and property damage arising from use of Vehicle as permitted by the Rental Agreement, **with limits as required by the state financial responsibility law or other applicable statute.** (bold added.)

12
13
14
15

16

17      13.     The document labeled Exhibit D further provides:

18
19      "Penske warrants that, to the extent permitted by law, the liability coverage described in this paragraph **is primary as respects any other insurance available to Customer or any Authorized Operator as defined in this Rental Agreement."** (bold added.)

20

21      14.     State Farm is informed and believes, and based upon that belief alleges that

22   Penske purchased the policy with Old Republic, and Does 1 through 5, in order fulfill their

23   insurance obligations to its customer when the customer selected the Penske Liability

24   Coverage option. State Farm is informed and believes and based upon such information and

25   belief alleges that the Old Republic Policy contains terms that would require it to defend

26   and indemnify renters and permissive drivers of vehicles rented by Penske where the

27   customer selected the Penske liability insurance option.

28      15.     On May 5, 2017, while the rented Penske truck was being operated by Joe

KNAPP,
PETERSEN
& CLARKE

-4-
*COMPLAINT FOR DECLARATORY RELIEF*

**Exhibit 1**
**09**

1   Garcia, an employee of L & L Logistics and Warehousing, Inc., the commercial rental truck

2   was involved in an accident with defendant Melba Fernandez, who is the plaintiff in action

3   number 19STCV12981.

4       16.     Following the subject accident, Penske and Old Republic admitted and

5   conceded that the coverage provided by Penske through the purchase by L & L Logistics

6   and Warehousing, Inc., of "Penske Provides" liability coverage was primary coverage in

7   relation to any other applicable coverage.

8       17.     However, Penske and Old Republic have contended and continue to contend

9   that the liability coverage limit for injury to one person was only $15,000 rather than the

10  $750,000 amount of coverage which would be required by statute for the commercial

11  vehicle rented by L & L Logistics and Warehousing, Inc., from Penske on May 5, 2017.

12      18.     An actual controversy has arisen and now exists between plaintiff and each

13  defendant as further set forth in paragraphs 19-24 below.

14      19.     Plaintiff State Farm contends that California statutory law, including Vehicle

15  Code § 3461.5, requires motor carriers of property who operate a commercial vehicle to be

16  insured with a liability coverage limit of $750,000 (combined single limit) for bodily

17  injuries to or death of one or more persons or for damage to or destruction of property,

18  unless one of the exceptions in Vehicle Code § 3461.5 apply. If the exception in section

19  3461.5 (a) (2) were to apply (and it is disputed it applies) the lowest amount of permissible

20  coverage would  not less than $300,000 (combined single limit). State Farm contends that

21  because L & L Logistics and Warehousing, Inc. was a licensed motor carrier operating a

22  commercial vehicle at the time of the accident that had a Gross Vehicle Weight Rating

23  (GVWR) in excess of 10,000 lbs., that the minimum statutory coverage Penske and Old

24  Republic were obligated to provide was $750,000 (combined single limit.)

25      20.     Pursuant to California statutory law and pursuant to the provisions of the

26  rental agreement, State Farm contends that Penske must provide liability coverage

27  protection with a liability coverage limit of $750,000 (combined single limit), on a primary

28  basis, and prior to any excess coverage becoming applicable pursuant to the State Farm

KNAPP,
PETERSEN
& CLARKE

-5-
*COMPLAINT FOR DECLARATORY RELIEF*

3950381.1  00100/10772

**Exhibit 1**
**10**

1  policy referred to herein.

2      21.     State Farm contends that the obligation of Penske to provide liability
3  coverage protection with a limit of up to $750,000 (combined single limit) is consistent
4  with the reasonable expectations of the renter and its agents who arranged for the rental of
5  the commercial truck on behalf of L & L Logistics and Warehousing, Inc., referred to in the
6  rental agreement as L & L Trucking. In addition, any effort by Penske and/or Old Republic
7  to limit coverage below the statutory minimum required of motor carriers is void and
8  unenforceable. Further, L & L Logistics and Warehouse, Inc. was not provided with any
9  written document which was plain, clear and conspicuous that showed that Penske or Old
10  Republic would only provide a mere $15,000 in liability that would not meet the statutory
11  minimum requirements for motor carriers of property.

12     22.     Defendant Penske disputes the contentions of plaintiff State Farm and
13  contends, alternatively, that the liability protection and coverage provided pursuant to the
14  Penske rental agreement provides primary liability coverage, but with liability coverage
15  limit of $15,000 for injury to one person in an accident.

16     23.     Defendant Melba Fernandez is a proper party to the action as having an
17  interest in the dispute and as a potential judgment creditor of L & L Logistics and
18  Warehousing, Inc. A controversy has arisen and now exists between all parties as to the
19  indemnity obligations owed by plaintiff State Farm and defendant Penske to defendant
20  Melba Fernandez.

21     24.     Plaintiff State Farm seeks a judicial determination that defendant Penske must
22  provide liability coverage and protection with a liability coverage limits in accordance with
23  California law of up to $750,000 (combined single limit) and that this coverage is primary
24  in relation to the State Farm coverage.

25         WHEREFORE, plaintiff State Farm Mutual Automobile Insurance Company
26  requests that this court issue its judgment in favor of plaintiff State Farm and against
27  defendants and each of them as follows:

28     1. Declaring the rights, duties or obligations of the parties herein with respect to the

KNAPP,
PETERSEN
& CLARKE

-6-
*COMPLAINT FOR DECLARATORY RELIEF*

3950381.1  00100/10772

**Exhibit 1**
**11**

1    amount of liability coverage available from Penske, Old Republic and from State

2    Farm regarding the civil claims which are the subject of action number

3    19STCV12981 in the Los Angeles County Superior Court;

4    2. Plaintiff State Farm further requests that this court award plaintiff State Farm its

5    costs of suit incurred herein; and

6    3. For such other and further relief as the court may deem proper.

7    Dated: December 30, 2019                    KNAPP, PETERSEN & CLARKE

8

9                                              By: _____

10                                                 Robert D. Brugge
                                                   Attorneys for Plaintiff
11                                                 State Farm Mutual Automobile
                                                   Insurance Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

KNAPP,
PETERSEN
& CLARKE    28

-7-
*COMPLAINT FOR DECLARATORY RELIEF*

3950381.1  00100/10772

Exhibit 1
12

# EXHIBIT A

Exhibit 1

13

Electronically FILED by Superior Court of California, County of Los Angeles on 04/16/2019 03:09 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel, Deputy Clerk

**SUM-100**

| **SUMMONS** *(CITACION JUDICIAL)* | *FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Jose Garcia, L&L Logistics and Warehousing, Inc., Penske Truck Leasing Co., L.P., Rose's Truck Rental, Inc., and DOES 1-25 Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Melba Fernandez

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court, Central District 312 N. Spring Street, Los Angeles, CA 90012 | **CASE NUMBER:** *(Número del Caso):* 19STCV12981 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lemuel Garcia, Esq. 1720 Cameron Ave, Suite 210, West Covina, CA 91790; 626-337-1111

| DATE: *(Fecha)* 04/16/2019 | Sherri R. Carter Executive Officer / Clerk of Court Clerk, by *(Secretario)* Marita P. Barel | , Deputy *(Adjunta)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant. Jose Garcia
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)      [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [X] by personal delivery on *(date):* 5-15-19

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

–9–

**EXHIBIT A**

Exhibit 1
14

19STCV12981

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Christopher Lui

Electronically FILED by Superior Court of California, County of Los Angeles on 04/16/2019 03:05 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk

**PLD-PI-001**

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Lemuel Garcia, SBN. 288695<br>Lem Garcia Law<br>1720 West Cameron Avenue, Suite 210<br>West Covina, CA 91790<br>TELEPHONE NO: (626) 337-1111   FAX NO. *(Optional):* (626) 337-1112<br>E-MAIL ADDRESS *(Optional):* lem@lemgarcialaw.com<br>ATTORNEY FOR *(Name):* Plaintiff, MELBA FERNANDEZ | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
  STREET ADDRESS: 312 N. Spring Street
  MAILING ADDRESS: 312 N. Spring Street
  CITY AND ZIP CODE: Los Angeles, CA 90012
  BRANCH NAME: Central District

PLAINTIFF: MELBA FERNANDEZ

DEFENDANT: JOSE GARCIA, L&L LOGISTICS & WAREHOUSING, INC., PENSKE TRUCK LEASING CO., L.P., Rose's Truck Rental, Inc.

☑ DOES 1 TO 25 , Inclusive

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
  ☐ AMENDED *(Number):*
Type *(check all that apply):*
  ☑ MOTOR VEHICLE   ☑ OTHER *(specify):* General Negligence
    ☑ Property Damage   ☐ Wrongful Death
    ☑ Personal Injury   ☑ Other Damages *(specify):* Accord. to Proof

| | CASE NUMBER: |
|---|---|
| Jurisdiction *(check all that apply):*<br>☐ ACTION IS A LIMITED CIVIL CASE<br>  Amount demanded  ☐ does not exceed $10,000<br>                ☐ exceeds $10,000, but does not exceed $25,000<br>☑ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>☐ ACTION IS RECLASSIFIED by this amended complaint<br>  ☐ from limited to unlimited<br>  ☐ from unlimited to limited | |

1. Plaintiff *(name or names):* MELBA FERNANDEZ

alleges causes of action against defendant *(name or names):*
JOSE GARCIA, L&L LOGISTICS AND WAREHOUSING, INC., PENSKE TRUCK LEASING CO., L.P., Rose's Truck Rental, Inc.

2. This pleading, including attachments and exhibits, consists of the following number of pages: 5

3. Each plaintiff named above is a competent adult
   a. ☐ except plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*
   b. ☐ except plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*

☑ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | **COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death** | Code of Civil Procedure, § 425.12<br>www.courtinfo.ca.gov |
|---|---|---|

-10-

Exhibit 1
15

PLD-PI-001

| SHORT TITLE: FERNANDEZ v. GARCIA, et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

  a. ☑ except defendant *(name):* L&L LOGISTICS
    (1) ☐ a business organization, form unknown
    (2) ☑ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  c. ☑ except defendant *(name):* ROSE'S TRUCK RENTAL
    (1) ☐ a business organization, form unknown
    (2) ☑ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  b. ☑ except defendant *(name):* PENSKE TRUCK LEASI
    (1) ☑ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  d. ☐ except defendant *(name):*
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

  a. ☑ Doe defendants *(specify Doe numbers):* 1 to 25, Inclusive    were the agents or employees of other named defendants and acted within the scope of that agency or employment.

  b. ☑ Doe defendants *(specify Doe numbers):* 1 to 25, Inclusive    are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because

  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, and

  a. ☐ has complied with applicable claims statutes, or
  b. ☐ is excused from complying because *(specify):*

     **COMPLAINT—Personal Injury, Property Damage, Wrongful Death**      Page 2 of 3

-11-

**Exhibit 1**
**16**

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| FERNANDEZ v. GARCIA, et al. | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☑ Motor Vehicle
   b. ☑ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☐ Other *(specify):*

11. Plaintiff has suffered
   a. ☑ wage loss
   b. ☑ loss of use of property
   c. ☑ hospital and medical expenses
   d. ☑ general damage
   e. ☑ property damage
   f. ☑ loss of earning capacity
   g. ☑ other damage *(specify):*

   According to Proof

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☑ compensatory damages
      (2) ☐ punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☑ according to proof
      (2) ☐ in the amount of: $

15. ☑ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*
   MV-1, MV-2, GN-1

Date:

John C. Jocelyn, Esq.
, (TYPE OR PRINT NAME)                          (SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]        COMPLAINT—Personal Injury, Property        Page 3 of 3
                                         Damage, Wrongful Death

-12-

Exhibit 1
17

PLD-PI-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| FERNANDEZ v. GARCIA, et al. | |

FIRST _____ **CAUSE OF ACTION—Motor Vehicle**
(number)

ATTACHMENT TO [✓] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name):* MELBA FERNANDEZ

MV- 1. Plaintiff alleges the acts of defendants were negligent; the acts were the legal (proximate) cause of injuries
    and damages to plaintiff; the acts occurred
    on *(date):* 5/5/17
    at *(place):*
    Nogales Street and San Jose Avenue, City of Industry, CA 91748

MV- 2. DEFENDANTS
    a. [✓] The defendants who operated a motor vehicle are *(names):*

        JOSE GARCIA
        [✓] Does 1 _____ to 25, Inclusive

    b. [✓] The defendants who employed the persons who operated a motor vehicle in the course of their employment
        are *(names):*
        JOSE GARCIA, L&L LOGISTICS AND WAREHOUSING, INC., PENSE TRUCK
        LEASING CO., L.P., ROSE'S TRUCK RENTAL, INC.
        [✓] Does 1 _____ to 25, Inclusive

    c. [✓] The defendants who owned the motor vehicle which was operated with their permission are *(names):*
        JOSE GARCIA, L&L LOGISTICS AND WAREHOUSING, INC., PENSE TRUCK
        LEASING CO., L.P., ROSE'S TRUCK RENTAL, INC.
        [✓] Does 1 _____ to 25, Inclusive

    d. [✓] The defendants who entrusted the motor vehicle are *(names):*
        JOSE GARCIA, L&L LOGISTICS AND WAREHOUSING, INC., PENSKE TRUCK
        LEASING CO., L.P., ROSE'S TRUCK RENTAL, INC.,
        [✓] Does 1 _____ to 25, Inclusive

    e. [✓] The defendants who were the agents and employees of the other defendants and acted within the scope
        of the agency were *(names):*
        JOSE GARCIA, L&L LOGISTICS AND WAREHOUSING, INC., PENSE TRUCK
        LEASING CO., L.P., ROSE'S TRUCK RENTAL, INC.
        [✓] Does 1 _____ to 25, Inclusive

    f. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
        [ ] listed in Attachment MV-2f [ ] as follows:

[ ] Does _____ to _____          Page ___4___

                                                    Page 1 of 1
Form Approved for Optional Use          **CAUSE OF ACTION—Motor Vehicle**          Code of Civil Procedure 425.12
Judicial Council of California                                                     www.courtinfo.ca.gov
PLD-PI-001(1) [Rev. January 1, 2007]

-13-

**Exhibit 1**
**18**

# EXHIBIT B

**Exhibit 1**
**19**

(                                                                              (

 **StateFarm®**

## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 460 3444-A15-75A including any endorsements, if applicable, for the policy term(s) January 01, 2014 to January 01, 2015 and insuring L & L Logistics and Warehousing Inc based on available records.

The following endorsements are included:
6018CD effective 02/06/2017
6030GF effective 02/06/2017
6128AC effective 02/06/2017
6037T.2 effective 04/07/2014

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of May 05, 2017.

Stephen Reuther
Underwriter
Date: March 12, 2018

1004516

2000 143551 200 03-21-2012

EXHIBIT B

-15-

**Exhibit 1**
**20**

State Farm Mutual Automobile Insu( Company

900 Old River Road
Bakersfield CA 93311-9501

14021-4-X   ( IUTL VOL

**DECLARATIONS PAGE**

NAMED INSURED
AT2
083059 0058
L & L LOGISTICS
AND WAREHOUSING, INC.
PO BOX 1033
HAWTHORNE CA   90251-1033

75-1045-4 X   A

POLICY NUMBER   460 3444-A15-75A
POLICY PERIOD APR 07 2014 to JAN 15 2015
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1172383323

AGENT
TONY FREEMAN
2097 COMPTON AVE STE 101
CORONA, CA 92881-7282

PHONE: (951)280-3516

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.
IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|------|------|-------|-----------|-------------------|-------|
| 2001 | GMC | C7H042 | BOX | 1GDJ7H1C81J501605 | Commercial |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage Limit-Each Accident $1,000,000 | $2281.63 |
| C | Medical Payments Coverage Limit-Each Person $25,000 | $54.80 |
| D | Comprehensive Coverage: $1,000 Deductible | $102.72 |
| G | Collision Coverage - $1,000 Deductible | $254.30 |
| U | Uninsured Motor Vehicle Coverage Bodily Injury Limits Each Person; Each Accident $100,000   $300,000 | $59.61 |
| U1 | Uninsured Motor Vehicle Property Damage Coverage | $7.41 |

Total premium for APR 07 2014 to JAN 15 2015.   $2,760.47   This is not a bill.

**IMPORTANT MESSAGES**

Replaced policy number 4603444-75.

Your total renewal premium for JAN 15 2014 to JAN 15 2015 is $3,575.74.

Location used to determine rate charged-275 E REDONDO BEACH BLVD, GARDENA CA   90248-2342.

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET –
FORM 9805B, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6018BN      COMMERCIAL VEHICLE
6036EP      BUSINESS NAMED INSURED.
6031DD      ANNUAL POLICY PERIOD
6126MD      EXCESS COVERAGE FOR PERSONAL VEHICLE SHARING.
6289DW      SINGLE LIMIT LIABILITY COVERAGE
6771BD      AMENDMENT OF NONRENEWAL AND CANCELLATION.
6037T.2 MCP65 CA# 0252133 PROCESSED EFFECTIVE APRIL 7, 2014.

Agent:       TONY FREEMAN
Telephone: (951)280-3516
Prepared   APR 16 2014      1045-ACE

See Reverse Side

06246/03049
155-3856 CA.2 05-2002 (o1s025lo)
HSX0N    (o1s025la)

(o1s025lc)

–16–

**Exhibit 1
21**

(                                                                                    (

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaxell*
Secretary

*Edward B. Rust Jr.*
President

Important . . .

California law requires us to provide you with information for filing complaints with the State Insurance Department regarding the coverage and service provided under this policy.

Complaints should be filed only after you and State Farm® or your agent or other company representative have failed to reach a satisfactory agreement on a problem.

Please forward such complaints to:          California Department of Insurance
                                            Consumer Services Division
                                            300 South Spring Street
                                            Los Angeles, CA 90013

                                            Or call toll free
                                            1-800-927-HELP (4357)

### NOTICE

We are required to furnish you with the following information:

1. An automobile liability insurance company may cancel a policy before the end of the current policy period for reasons described in the provision titled **Cancellation** which is located in the **General Terms** section of your policy (refer to the Contents in the beginning of your policy for the page number).

2. An automobile liability insurance company may increase the premium or refuse to renew the policy for any of the following reasons:

   a. Accident involvement by an insured, and whether an insured is at fault in the accident.

   b. A change in, or an addition of, an insured vehicle.

   c. A change in, or addition of, an insured under the policy.

   d. A change in the location of garaging of an insured vehicle.

   e. A change in the use of the insured vehicle.

   f. Convictions for violating any provision of the Vehicle Code or the Penal Code relating to the operation of a motor vehicle.

   g. The payment made by an insurer due to a claim filed by an insured or a third party.

An automobile liability insurance company may increase the premium or refuse to renew the policy for reasons that are not listed above but which are lawful and not unfairly discriminatory.

cavb2
D10

**Exhibit 1**
**22**



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

**WARNING**

Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

State Farm®
**Car Policy**
Booklet

**California**
Policy Form 9805B

−18−

**Exhibit 1**
**23**

## CONTENTS

| | |
|---|---|
| THIS POLICY | 3 |
| DEFINITIONS | 4 |
| LIABILITY COVERAGE | 6 |
| Additional Definition | 6 |
| Insuring Agreement | 6 |
| Supplementary Payments | 6 |
| Limits | 7 |
| Nonduplication | 7 |
| Exclusions | 7 |
| If Other Liability Coverage Applies | 8 |
| Required Out-of-State Liability Coverage | 9 |
| Financial Responsibility Certification | 9 |

| | |
|---|---|
| MEDICAL PAYMENTS COVERAGE | 9 |
| Additional Definitions | 9 |
| Insuring Agreement | 10 |
| Determining Medical Expenses | 10 |
| Arbitration | 10 |
| Limit | 11 |
| Nonduplication | 11 |
| Exclusions | 11 |
| If Other Medical Payments Coverage or Similar Vehicle Insurance Applies | 12 |
| Our Payment Options | 13 |

| | |
|---|---|
| UNINSURED MOTOR VEHICLE COVERAGE | 13 |
| Additional Definitions | 13 |
| Insuring Agreement | 14 |
| Deciding Fault and Amount | 14 |
| Limits | 14 |
| Nonduplication | 15 |
| Exclusions | 15 |
| If Other Uninsured Motor Vehicle Coverage Applies | 16 |
| Our Payment Options | 16 |

| | |
|---|---|
| UNINSURED MOTOR VEHICLE PROPERTY DAMAGE COVERAGE | 16 |
| Additional Definitions | 16 |
| Insuring Agreement | 17 |

| | |
|---|---|
| Deciding Fault and Amount | 17 |
| Limits and Loss Settlement | 17 |
| Exclusions | 18 |
| If Other Uninsured Motor Vehicle Property Damage Coverage Applies | 18 |
| Our Payment Options | 18 |

| | |
|---|---|
| PHYSICAL DAMAGE COVERAGES | 18 |
| Additional Definitions | 18 |
| Insuring Agreements | 19 |
| Supplementary Payments – Comprehensive Coverage and Collision Coverage | 20 |
| Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage | 20 |
| Limits – Car Rental and Travel Expenses Coverage | 22 |
| Nonduplication | 22 |
| Exclusions | 22 |
| If Other Physical Damage Coverage or Similar Coverage Applies | 24 |
| Financed Vehicle | 24 |
| Our Payment Options | 24 |

| | |
|---|---|
| DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE | 25 |
| Additional Definition | 25 |
| Insuring Agreement | 25 |
| Benefit | 25 |
| Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage | 26 |
| Our Payment Options– Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage | 27 |

| | |
|---|---|
| LOSS OF EARNINGS COVERAGE | 25 |
| Additional Definitions | 26 |
| Insuring Agreement | 26 |
| Limit | 26 |
| Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage | 26 |
| Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage | 27 |

**INSURED'S DUTIES**.......................................... 27
Notice to Us of an Accident or Loss................ 27
Notice to Us of a Claim or Lawsuit................. 27
Insured's Duty to Cooperate With Us ............. 27
Questioning Under Oath................................. 27
Other Duties Under the Physical
Damage Coverages.......................................... 28
Other Duties Under Uninsured Motor Vehicle
Property Damage Coverage............................. 28
Other Duties Under Medical Payments
Coverage, Uninsured Motor Vehicle, Coverage,
Death, Dismemberment and Loss of Sight
Coverage, and Loss of Earnings Coverage...... 28

**GENERAL TERMS** .......................................... 29
When Coverage Applies .................................. 29

Where Coverage Applies...................................29
Limited Coverage in Mexico............................29
Newly Owned or Newly Leased Car...............30
Changes to This Policy.....................................30
Premium...........................................................30
Renewal............................................................31
Nonrenewal ......................................................31
Cancellation......................................................31
Assignment.......................................................32
Bankruptcy or Insolvency of the Insured ........32
Concealment or Fraud ......................................32
Our Right to Recover Our Payments................32
Legal Action Against Us...................................32
Choice of Law ..................................................33
Severability ......................................................33

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of the required premium when due for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

      (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

         (a) a license to drive; or

      (b) a vehicle registration suspended, revoked, or refused.

      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

3
9805B

−20−

**Exhibit 1
25**

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use with that coverage. *Car* does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer.

*Domestic Partner* means a *person* who is in a registered domestic partnership as qualified by California law.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you.* A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you.*

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car,* subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you.*

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:

   a. *you*;

   b. any *resident relative*;

   c. any other *person* who resides primarily in *your* household; or

   d. an employer of any *person* described in a., b., or c. above; or

2. has been operated by, rented by, or in the possession of:

   a. *you*; or

   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss.*

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Personal Vehicle Sharing* means the use of a *private passenger car* by *persons* other than the vehicle's owner in connection with a *personal vehicle sharing program* or any similar program.

*Personal Vehicle Sharing Program* means a legal entity qualified to do business in the State of California and engaged in the business of facilitating the sharing of *private passenger cars* for noncommercial use by individuals within the state.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. while not used for:

Exhibit 1
26

(1) wholesale; or

(2) retail

pickup or delivery; and

b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means, except in Uninsured Motor Vehicle Coverage, a *person*, other than *you*, who resides with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse or *domestic partner* by blood, marriage, domestic partnership as qualified by California law, or adoption, including an unemancipated child of either who is away at school if such child:

   a. otherwise maintains his or her residence with that named insured; and

   b. is neither married nor a *domestic partner*; or

2. a ward or a foster child of that named insured, his or her spouse or *domestic partner*, or a *person* described in 1. above.

See **Additional Definitions** in Uninsured Motor Vehicle Coverage for the definition used in that coverage.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a *private passenger car*;

   b. not designed to carry *persons*; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means, except in Uninsured Motor Vehicle Coverage, the named insured or named insureds shown on the Declarations Page. If a *person*, then "*you*" or "*your*" includes the spouse or *domestic partner* of the first *person* shown as a named insured if the spouse or *domestic partner* resides with that named insured.

See **Additional Definitions** in Uninsured Motor Vehicle Coverage for the definition used in that coverage.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

5
9805B

-22-

**Exhibit 1**
**27**

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse or *domestic partner* who resides with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer, to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse or *domestic partner*;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* permission, express or implied, and within the scope of that permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

### Insuring Agreement

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*;

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

### Supplementary Payments

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* will not defend any lawsuit or pay attorney fees incurred:

   a. after *we* deposit in court or pay:

      (1) the amount due under the **Insuring Agreement** of this policy's Liability Coverage; or

      (2) the limit of this coverage; or

   b. if there is no coverage under this policy;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

6
9805B

−23−

**Exhibit 1
28**

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

1. The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

2. The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

3. The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

4. These Liability Coverage limits shall be reduced by payments for *bodily injury* damages made to or for the *insured* under the Uninsured Motor Vehicle Coverage of this policy.

5. These Liability Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES, OR DIRECTS ANOTHER *PERSON* TO INTENTIONALLY CAUSE, *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO ANY *INSURED* OR FOR *BODILY INJURY* TO ANY *INSURED* WHENEVER THE ULTIMATE BENEFITS OF THAT INDEMNIFICATION ACCRUE DIRECTLY OR INDIRECTLY TO AN *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF AND IN THE COURSE OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

8. WHILE THAT *INSURED* IS VALET PARK-ING A VEHICLE;

9. WHILE MAINTAINING OR USING ANY VE-HICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTI-TUTE CAR*, OR A *TRAILER* IN ANY BUSI-NESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

10. FOR DAMAGE TO PROPERTY, INCLUDING A MOTOR VEHICLE OPERATED BY ANY *INSURED*, WHILE IT IS:

a. *OWNED BY*;

b. RENTED TO;

c. IN THE CHARGE OF; OR

d. TRANSPORTED BY

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such dam-age is caused by an *insured* while operat-ing another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT;

12. FOR ANY ORDER OF RESTITUTION IS-SUED BY A COURT IN A CRIMINAL PRO-CEEDING OR EQUITABLE ACTION;

13. WHILE USING A *TRAILER* WITH A MO-TOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING

CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CON-TEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIV-ING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF *YOUR CAR* OR A *NEWLY AC-QUIRED CAR* WHILE USED IN *PERSON-AL VEHICLE SHARING*; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the Liability Coverage limits of such poli-cies will not be added together to deter-mine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the sin-gle highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* at-tached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as pri-mary coverage for the same accident,

then *we* will pay the proportion of dam-ages payable as primary that *our* applica-ble limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

8
9805B

-25-

Exhibit 1
30

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the

*State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:
   a. while *occupying*:
      (1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*;

(4) a *non-owned car*; or

(5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

9
9805B

−26−

**Exhibit 1**
**31**

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent.

*Medical Expenses* mean *reasonable expenses* for *medical services.*

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

   b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* that an *insured* is legally obligated to pay because of *bodily injury* that is

sustained by an *insured* and caused by a motor vehicle accident if:

a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

   The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

   Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

**Exhibit 1**
**32**

3. The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

11
9805B

-28-

**Exhibit 1**
**33**

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM OR FROM ANY OTHER WEAPON;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; or

15. WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

a. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the

*State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

12
9805B

−29−

**Exhibit 1**
**34**

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*; or

   c. a *temporary substitute car*.

   Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a public or livery conveyance is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Resident Relative* means a *person*, other than *you*, who resides with either a named insured shown on the Declarations Page or the spouse or *domestic partner* of that named insured, and who is:

1. related to that named insured or his or her spouse or *domestic partner* by blood, marriage,

domestic partnership as qualified by California law, or adoption, including an unemancipated child of either who is away at school and is neither married nor a *domestic partner*; or

2. a ward or a foster child of that named insured, his or her spouse or *domestic partner*, or a *person* described in 1. above.

*Underinsured Motor Vehicle* means a land motor vehicle, the ownership, maintenance, or use of which is insured, self-insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law, but such liability coverage limits are less than the Uninsured Motor Vehicle Coverage limits of this policy.

*Uninsured Motor Vehicle* means:

1. a land motor vehicle the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or

   b. insured or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of California; or

      (2) the insuring company:

13
9805B

-30-

**Exhibit 1**
**35**

(a) denies that its policy provides lia-
bility coverage for compensatory
damages that result from the ac-
cident;

(b) refused to admit coverage except
conditionally or with reservation;
or

(c) is or becomes insolvent within
one year of the accident;

2. an *underinsured motor vehicle*; or

3. a "hit-and-run" land motor vehicle whose own-
er or operator remains unknown and which has
physical contact with:

a. an *insured*; or

b. the vehicle an *insured* is *occupying*.

*Uninsured Motor Vehicle* does not include a land
motor vehicle:

1. whose ownership, maintenance, or use is pro-
vided Liability Coverage by this policy;

2. *owned by* or operated by *you*, any *resident
relative*, or any resident of *your* household un-
less:

a. the vehicle strikes an *insured*;

b. the vehicle is *owned by* the injured *insured*;
and

c. the vehicle is being operated, or caused to
be operated by a *person* without the in-
jured *insured's* consent in connection with
criminal activity that has been documented
in a police report and that the injured *in-
sured* is not a party to such activity;

3. self-insured within the meaning of the motor
vehicle financial responsibility law of the state
in which the motor vehicle is registered;

4. *owned by* the United States of America, Cana-
da, a state or political subdivision of any of
those governments, or an agency of any of the
foregoing;

5. that is any equipment or vehicle designed or
modified for use primarily off public roads ex-
cept while actually upon public roads; or

6. while located for use as a residence or premises
and not as a vehicle.

*You* or *Your* means the named insured or named in-
sureds shown on the Declarations Page. If a named
insured shown on the Declarations Page is a *person*,
then "*you*" or "*your*" includes the spouse or *domestic
partner* of that named insured.

**Insuring Agreement**

*We* will pay compensatory damages for *bodily inju-
ry* an *insured* is legally entitled to recover from the
owner or operator of an *uninsured motor vehicle*.
The *bodily injury* must be:

1. sustained by an *insured*; and

2. caused by an accident arising out of the opera-
tion, maintenance, or use of an *uninsured mo-
tor vehicle* as a motor vehicle.

If the damages are caused by an *underinsured mo-
tor vehicle*, then *we* will pay only if the full amount
of all available limits of all motor vehicle bodily
injury liability insurance, self-insurance, or cash
deposits or bonds posted to satisfy a financial re-
sponsibility law that apply to the *insured's bodily
injury* have been exhausted by payment of judg-
ments or settlements, and proof of the payment is
submitted to *us*.

**Deciding Fault and Amount**

Two questions must be decided by agreement be-
tween the *insured* and *us*:

1. Is the *insured* legally entitled to collect damag-
es from the owner or operator of the *uninsured
motor vehicle*; and

2. If so, in what amount?

If there is no agreement, upon written request of the
*insured* or *us*, these questions shall be decided by
arbitration as provided by section 11580.2 of the
California Insurance Code. The *insured's* written
request must be sent to *us* by certified mail, return
receipt requested. The arbitration judgment may be
filed in any court having jurisdiction. Both parties
will share the cost of arbitration equally. Attorney
fees and fees for medical and other expert witnesses
are not considered costs of arbitration.

*We* are not bound by any judgment against any *per-
son* or organization obtained without *our* written
consent.

Arbitrators shall have no authority to decide any
questions of law or conduct arbitration on a class-
wide or class-representative basis.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits
are shown on the Declarations Page under "Un-
insured Motor Vehicle Coverage – Bodily Inju-
ry Limits – Each Person, Each Accident".

2. If the damages are caused by an *uninsured
motor vehicle* other than an *underinsured mo-
tor vehicle*, then the limit shown under "Each
Person" is the most *we* will pay for all damages
resulting from *bodily injury* to any one *insured*
injured in any one accident, including all dam-
ages sustained by other *insureds* as a result of
that *bodily injury*. The limit shown under

14
9805B

–31–

**Exhibit 1**
**36**

"Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident.

3. If the damages are caused by an *underinsured motor vehicle*, then:

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(1) the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

(2) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for *bodily injury* made to all *insureds* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury*.

4. The limits described in items 2. and 3. above shall be reduced by:

a. payments for *bodily injury* damages made to or for the *insured* under the Liability Coverage of this policy; and

b. the amount paid and the present value of all amounts payable to an *insured*, his or her executor, administrator, heirs, or legal representative under any workers compensation law, exclusive of non-occupational disability benefits.

5. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH OR PROSECUTES TO JUDGMENT ANY ACTION AGAINST ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS. This exclusion does not apply to a settlement or a judgment for damages resulting from *bodily injury* caused by an *underinsured motor vehicle*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE, OTHER THAN *YOUR CAR* OR *A NEWLY ACQUIRED CAR*, THAT IS OWNED BY, OR LEASED UNDER A WRITTEN CONTRACT FOR A PERIOD OF SIX MONTHS OR LONGER, TO:

a. *YOU*; OR

b. ANY *RESIDENT RELATIVE*. This exclusion (2.b.) does not apply to *you* while *occupying* a motor vehicle that is not owned by or leased to any *person* included in the definition of *you*;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM OR FROM ANY OTHER WEAPON;

4. TO THE EXTENT IT BENEFITS DIRECTLY OR INDIRECTLY:

a. ANY WORKERS' COMPENSATION CARRIER; OR

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW;

5. TO THE EXTENT IT BENEFITS DIRECTLY THE UNITED STATES, ANY STATE, OR ANY POLITICAL SUBDIVISION THEREOF;

6. FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*;

7. FOR AN *INSURED* WHILE *OCCUPYING* A MOTOR VEHICLE RENTED OR LEASED TO THAT *INSURED* FOR PUBLIC OR LIVERY PURPOSES;

15
9805B

**Exhibit 1**
37

8. FOR AN *INSURED* WHILE *OCCUPYING* A MOTOR VEHICLE OTHER THAN *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF THE OWNER HAS UNINSURED MOTOR VEHICLE COVERAGE OR UNDERINSURED MOTOR VEHICLE COVERAGE ON THAT MOTOR VEHICLE WITH LIMITS EQUAL TO OR GREATER THAN THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS PROVIDED BY THIS POLICY;

9. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

10. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

11. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. Regardless of the number of vehicles involved, whether insured or not, *persons* covered, claims made, premiums paid, or the number of premiums shown on the policy, in no event shall the limits of coverage for two or more motor vehicles, or two or more policies be added together, combined, or stacked to determine the limit of uninsured motor vehicle coverage available to an *insured*.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   If the Uninsured Motor Vehicle Coverage provided by this policy and the uninsured motor vehicle coverage provided by one or more other sources both apply as primary coverage for the same accident, then *we* will pay the proportion of damages payable as primary that the applicable limit of this policy bears to the sum of that limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   If the Uninsured Motor Vehicle Coverage provided by this policy and the uninsured motor vehicle coverage provided by one or more other sources both apply as excess coverage for the same accident, then *we* will pay the proportion of damages payable as excess that the applicable limit of this policy bears to the sum of that limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE PROPERTY DAMAGE COVERAGE

This policy provides Uninsured Motor Vehicle Property Damage Coverage if "UI" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Property Damage* means damage to *your car* or a *newly acquired car* and does not include loss of use of such vehicle.

*Uninsured Motor Vehicle* means a land motor vehicle which involves actual, direct physical contact with *your car* or a *newly acquired car* and the ownership, maintenance, and use of which is:

1. not insured or bonded for property damage liability at the time of the accident; or

2. insured or bonded for property damage liability at the time of the accident; but

   a. the limits are less than required by the financial responsibility act of California; or

   b. the insuring company:

      (1) denies that its policy provides liability coverage for *property damage* that results from the accident;

16
9805B

−33−

Exhibit 1
38

(2) refused to admit coverage except conditionally or with reservation; or

(3) is or becomes insolvent within one year of the accident;

A land motor vehicle is an *uninsured motor vehicle* only if the owner or operator of the vehicle is identified, or if the vehicle is identified by its license number.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by* or operated by *you*, any *resident relative*, or any resident of *your* household;

3. self-insured within the meaning of the financial responsibility provisions of the state in which the motor vehicle is registered;

4. *owned by* the United States of America, Canada, a state or political subdivision of any government, or an agency of any of the foregoing;

5. that is insured or bonded with limits equal to or greater than the minimum property damage liability limits required by the financial responsibility act of California;

6. that is a farm-type tractor or equipment designed for use principally off public roads except while actually upon public roads; or

7. operated on rails or crawler treads, or while located for use as a residence for premises and not as a vehicle.

### Insuring Agreement

*We* will pay damages for *property damage you* are legally entitled to recover from the owner or operator of an *uninsured motor vehicle*. The *property damage* must be caused by an accident arising out of the operation, maintenance, or use of an *uninsured motor vehicle*.

### Deciding Fault and Amount

Two questions must be decided by agreement between *you* and *us*:

1. Are *you* legally entitled to collect damages for *property damage* from the owner or operator of the *uninsured motor vehicle*; and

2. If so, in what amount?

If there is no agreement, upon written request of *you* or *us*, these questions shall be decided by arbitration as provided by section 11580.26 of the California Insurance Code. The arbitration judgment may be filed in any court having jurisdiction. Both parties will share the cost of arbitration equally.

Attorney fees and fees for expert witnesses are not considered costs of arbitration.

*We* are not bound by any judgment against any *person* or organization obtained without *our* written consent.

### Limits and Loss Settlement

1. The most *we* will pay for all *property damage* as the result of one accident is:

   a. the amount of any collision coverage deductible applicable to *property damage* up to a maximum of $3,500; or

   b. $3,500 if there is no collision coverage provided by this policy or any other policy that is applicable to the *property damage*. Subject to the limit, *we* have the right to settle with *you* for the *property damage* in one of the following ways:

      (1) Pay the cost to repair *your car* or the *newly acquired car*.

         *We* have the right to choose one of the following to determine the cost to repair the *car*:

         (a) The cost agreed to by both *you* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to the prevailing competitive price.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *car* to its pre-loss condition.

      (2) Pay the actual cash value of *your car* or the *newly acquired car*. The damaged *car* must be given to *us* in exchange for *our* payment, unless *we* agree that *you* may keep it. If *you* keep the *car*, then *our* payment will be reduced by the value of the *car* after the loss.

2. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE:

1. IF *YOU*, WITHOUT *OUR* WRITTEN CON-SENT, SETTLE WITH OR PROSECUTE TO JUDGMENT ANY ACTION AGAINST ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *PROPERTY DAM-AGE* AND THEREBY IMPAIR OUR RIGHT TO RECOVER OUR PAYMENTS; AND

2. FOR *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHI-CLE SHARING.*

**If Other Uninsured Motor Vehicle Property Damage Coverage Applies**

If other uninsured motor vehicle property damage coverage applies to *property damage*, *we* are liable only for *our* share. *Our* share is that percent of the damages that the limit of this coverage bears to the sum of such limit and the limits of all similar coverage that applies to the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. *You*;

2. The repairer; or

3. A creditor shown on the Declarations Page, to the extent of its interest.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

a. being driven by an *insured*; or

b. in the custody of an *insured* if at the time of the *loss* it is:

(1) not being driven; or

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle. Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle.*

18
9805B

-35-

**Exhibit 1**
**40**

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; or

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us*; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

         (b) ends on the date the vehicle is repaired.

      These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business*, a *car* rental business, or a *car* leasing business while *your car* or a *newly acquired car* is:

      (1) not drivable; or

      (2) being repaired

      as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

**Exhibit 1
41**

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a result of the *loss*; or

    (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been repaired or replaced;

    (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

    (c) five days after *we* offer to pay for the *loss* if the vehicle is:

        (i) a total loss as determined by *us*; or

        (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

    (a) starts after the *loss* occurs; and

    (b) ends on the earlier of:

        (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

        (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*, a *car* rental business, or a *car* leasing business.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

    a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

    b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

    a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

    b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

20
9805B

−37−

**Exhibit 1**
**42**

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

    (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

        (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

        (b) A bid or repair estimate approved by *us*; or

        (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

            (iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

    (2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

    (3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

    (4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

    (1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

        (a) The owner and *we* will each select a competent appraiser.

        (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

        (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

        (d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

        (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

        (f) *We* do not waive any of *our* rights by submitting to an appraisal.

    (2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless the owner chooses to keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

21
9805B

**Exhibit 1**
**43**

2. The most *we* will·pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

   The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

   a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

      (1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

      (2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

   b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*. This exclusion does not apply to the extent of the ownership interest of an *insured* who had no involvement in causing the *loss*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED:

   a. SALES AGREEMENT; OR

   b. CONSIGNMENT AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

22
9805B

-39-

Exhibit 1
44

9. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT **COVERED VEHICLE** BY ANY GOVERNMENTAL AUTHORITY;

10. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM WAR OF ANY KIND;

11. **YOUR CAR** WHILE SUBJECT TO ANY:

a. LIEN AGREEMENT;

b. RENTAL AGREEMENT;

c. LEASE AGREEMENT; OR

d. SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY **NON-OWNED CAR** WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY **PERSON** WHILE THAT **PERSON** IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A **CAR BUSINESS**, A **CAR** RENTAL BUSINESS, OR A **CAR** LEASING BUSINESS; OR

b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS**, A **CAR** RENTAL BUSINESS, OR A **CAR** LEASING BUSINESS. This exclusion (12.b.) does not apply to a **private passenger car**;

13. ANY PART OR EQUIPMENT OF A **COVERED VEHICLE** IF THAT PART OR EQUIPMENT:

a. FAILS OR IS DEFECTIVE; OR

b. IS DAMAGED AS A DIRECT RESULT OF:

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the **loss** is the result of theft of the **covered vehicle**;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE **COVERED VEHICLE** IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RE-CONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. **OWNED BY** AN **INSURED**; AND

c. NOT SHOWN ON THE DECLARA-TIONS PAGE;

19. ANY **COVERED VEHICLE** WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; or

20. **YOUR CAR** OR A **NEWLY ACQUIRED CAR** WHILE USED IN **PERSONAL VEHICLE SHARING**.

23
9805B

**Exhibit 1**
**45**

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of

the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least:

a. 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor if the policy is nonrenewed or the cancellation is for non-payment of premium; or

b. 20 days after the date *we* mail or electronically transmit a notice of the termination to the creditor if the cancellation is for any reason other than nonpayment of premium.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:
      
      (1) *You*;
      
      (2) The repairer; or
      
      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:
      
      (1) *You*;
      
      (2) The owner of such vehicle;
      
      (3) The repairer; or
      
      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

24
9805B

-41-

**Exhibit 1**
**46**

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

#### Additional Definition

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

#### Insuring Agreement

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

#### Benefit

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

### Death, Dismemberment and Loss of Sight Benefits Schedules

If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

### LOSS OF EARNINGS COVERAGE

This policy provides Loss of Earnings Coverage if "Z" is shown under "SYMBOLS" on the Declarations Page.

Exhibit 1
47

(            (

**Additional Definitions**

*Insured* means a *person* whose name is shown under "Loss of Earnings Coverage – Persons Insured" on the Declarations Page.

*Total Disability* means the *insured's* inability to work, either full or part time, in his or her occupation or any other similar occupation for which he or she is reasonably fitted by education, training, or experience.

*Weekly Earnings* means 85% of all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis an average will be used. The average is 85% of the total earnings for the 52 weeks just prior to the accident divided by 52.

**Insuring Agreement**

*We* will pay the *insured* his or her loss of *weekly earnings*, which occur while the *insured* is living, due to continuous *total disability* that:

1. is the direct result of *bodily injury* caused by an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause. At the time of the accident, the *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer; and

2. starts within 20 days immediately following the date of the accident and lasts for a period of at least 30 consecutive days. *We* will not pay for the first seven days of the 30 day period.

**Limit**

The most *we* will pay any one *insured* is:

1. $250 for each full workweek of *total disability*; and

2. a pro rata portion of $250 for less than a full workweek of *total disability*.

Subject to the workweek limit, the most *we* will pay any one *insured* for all loss of *weekly earnings* due to any one accident is $15,000.

*We* will pay once every two weeks the *insured's* loss of *weekly earnings* owed.

**Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE DO NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

26
9805B

−43−

Exhibit 1
48

4.  FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

    a.  WAR OF ANY KIND;

    b.  NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

    c.  THE DISCHARGE OF A FIREARM;

    d.  EXPOSURE TO *FUNGI*;

    e.  SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

    f.  DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1.  **Notice to Us of an Accident or Loss**

    The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

    a.  *your* name;

    b.  the names and addresses of all *persons* involved in the accident or *loss*;

    c.  the hour, date, place, and facts of the accident or *loss*; and

    d.  the names and addresses of witnesses to the accident or *loss*.

2.  **Notice to Us of a Claim or Lawsuit**

    a.  If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

    b.  If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3.  **Insured's Duty to Cooperate With Us**

    a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:

        (1) making settlements;

        (2) securing and giving evidence; and

        (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

    b.  The *insured* must not, except at his or her own cost, voluntarily:

        (1) make any payment to others; or

        (2) assume any obligation to others

        unless authorized by the terms of this policy.

    c.  Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

4.  **Questioning Under Oath**

    Under:

    a.  Liability Coverage, each *insured*;

    b.  Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

    c.  Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

    must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

27
9805B

**Exhibit 1**
49

5. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the *covered vehicle* must:

   a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

   b. make a prompt report to the police when the *loss* is the result of theft;

   c. allow *us* to:

      (1) inspect any damaged property:

         (a) before its repair or disposal; and

         (b) during its repair;

      (2) test any part or equipment before that part or equipment is removed or repaired; and

      (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

   d. provide *us* all:

      (1) records;

      (2) receipts; and

      (3) invoices

      that *we* request and allow *us* to make copies; and

   e. not abandon the *covered vehicle* to *us*.

6. **Other Duties Under Uninsured Motor Vehicle Property Damage Coverage**

   When there is *property damage*, *you* must:

   a. report the accident to *us* within 10 days. Another *person* may make the report on *your* behalf;

   b. protect the damaged property from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

   c. allow *us* to:

      (1) inspect any damaged property:

         (a) before its repair or disposal; and

         (b) during its repair;

      (2) test any part or equipment before that part or equipment is removed or repaired; and

      (3) move the damaged property at *our* expense in order to conduct such inspection or testing;

   d. provide *us* all:

   (1) records;

   (2) receipts; and

   (3) invoices

   that *we* request and allow *us* to make copies; and

   e. not abandon the damaged property to *us*.

7. **Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage**

   A *person* making claim under:

   a. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

      (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

      (2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

      (3) provide written authorization for *us* to obtain:

         (a) medical bills;

         (b) medical records;

         (c) wage, salary, and employment information; and

         (d) any other information *we* deem necessary to substantiate the claim.

         If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

         If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

      (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

28
9805B

-45-

**Exhibit 1**
**50**

b. Uninsured Motor Vehicle Coverage must report a "hit-and-run" accident to the police within 24 hours and to *us* within 30 days. Another *person* may make the report on behalf of the *person* making claim;

c. · Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit

against the party liable for the accident; and

d. Loss of Earnings Coverage must:

(1) make a claim under this policy;

(2) report to *us* when that *person* has a *total disability*; and

(3) provide proof of continued *total disability* when *we* ask for it.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage apply anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Medical Payments Coverage**

c. **Uninsured Motor Vehicle Coverage**

d. **Uninsured Motor Vehicle Property Damage Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF CALIFORNIA IN THE UNITED STATES OF AMERICA.

29
9805B

−46−

**Exhibit 1**
**51**

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of California in the United States of America.

4. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

   (1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

   (2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

5. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

   (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

   (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of California without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

   (1) No change of interest in this policy is effective unless *we* consent in writing.

   (2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

      (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

      (b) the legal representative of the deceased named insured.

   This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

   Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

   (1) *you*; or

   (2) the United States Postal Service.

6. **Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is

30
9805B

-47-

**Exhibit 1**

**52**

due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding information used to determine the premium including the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

If *you* do not provide *us* information used to determine the premium when *we* ask, then *we* will notify *you* in writing of *our* intent to increase the premium due to *your* failure to provide the requested information. If *you* do not respond within 21 days after the date *we* mail or deliver the notice, then *we* may increase the premium during the policy period.

### 7. Renewal

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 8. and 9. below.

### 8. Nonrenewal

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

### 9. Cancellation

a. **How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

b. **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(1) If *we* mail or deliver a cancellation notice because the premium is not paid when due, then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) *We* will not cancel this policy before the end of the current policy period unless the cancellation is based on one or more of the following reasons:

(a) the premium is not paid when due;

(b) fraud or material misrepresentation affecting the policy or any *insured*; or

31
9805B

-48-

**Exhibit 1**
**53**

(c) a substantial increase in the hazard insured against as allowed by California law. This includes, but is not limited to when *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under:

   (i) suspension, if such suspension is not removed prior to the date cancellation becomes effective and is based on a reason other than *our* failure to make a filing required by the California Insurance or Vehicle Codes, if a request for such a filing was made by an insured; or

   (ii) revocation, for any reason other than an insurer's failure to make a filing required by the California Insurance Code.

c. **Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

10. **Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

11. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

12. **Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

13. **Our Right to Recover Our Payments**

Uninsured Motor Vehicle Coverage payments for damages caused by an *underinsured motor vehicle*, Death, Dismemberment and Loss of Sight Coverage payments, and Loss of Earnings Coverage payments are not recoverable by *us*. Paragraph a. **Subrogation** does not apply to Medical Payments Coverage. Otherwise, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

   (1) doing nothing to impair that legal right;

   (2) executing any documents *we* may need to assert that legal right; and

   (3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

   (1) hold in trust for *us* the proceeds of any recovery; and

   (2) reimburse *us* to the extent of *our* payment.

14. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

   (1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

   (2) agreement between the claimant and *us*.

   If a judgment is secured against the *insured* or his or her estate based on a *bodily injury*, death, or property damage claim covered by this policy, then a lawsuit may be brought against *us* under this policy by a judgment creditor.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

c. Uninsured Motor Vehicle Coverage if, within two years from the date of the accident:

Exhibit 1
54

(1) a lawsuit for *bodily injury* has been filed in the proper court against the uninsured motorist;

(2)· an agreement as to the amount due under this coverage has been made; or

(3) the *insured* or his or her representative has formally started arbitration proceedings by making a written request, sent to *us* by certified mail, return receipt requested.

If a lawsuit has been filed against the uninsured motorist, written notice of the lawsuit must be given to *us* within a reasonable time after the *insured* knew or should have known that the motorist was uninsured; but *we* may not require that this notice be given earlier than two years from the date of the accrual of the cause of action on which the claim is based.

This provision does not limit a right of action resulting from *bodily injury* caused by an *underinsured motor vehicle.*

d. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss.*

15. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. California will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

16. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

**Exhibit 1**
**55**

Policy Form 9805B
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

Exhibit 1
56

Policy Number: 460 3444-A15-75A
Sheet 1 of 3

PLEASE ATTACH TO YOUR POLICY BOOKLET

## 6018BN COMMERCIAL VEHICLE

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### 1. DEFINITIONS

*Trailer* is changed to read:

*Trailer* means:

1. a trailer:
   a. designed to be pulled by a *private passenger car*;
   b. not designed to carry *persons*;
   c. while not used as premises for office, store, or display purposes; and
   d. while used for pleasure; or
2. a farm implement or farm wagon while pulled on public roads by a *car*.

### 2. LIABILITY COVERAGE

a. **Additional Definition**

The following are added:

(1) *Collision* means:
   (a) a vehicle hitting or being hit by another vehicle or another object; or
   (b) the overturning of a vehicle.

(2) *Pollutants* means any solid, liquid or gaseous irritant or contaminant, toxic substance, hazardous substance, or oil in any form.

(3) *Work* means any work or operations performed by or on behalf of an *insured* including:
   (a) any materials, parts, or equipment furnished in connection with such work or operations; and

(b) any warranties or representations made at any time with respect to the fitness, quality, durability, or performance of such work or operations of the items described in (a) above.

b. **Exclusions**

The following are added:

(1) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE MAINTENANCE OR USE OF A *NON-OWNED CAR.*

(2) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE. This exclusion does not apply to equipment:
   (a) mounted on the vehicle and designed solely for the loading or unloading of the vehicle; or
   (b) designed for:
      (i) snow removal;
      (ii) street cleaning; or
      (iii) road maintenance, other than construction or resurfacing.

(3) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF *WORK* AFTER IT IS CONSIDERED COMPLETED. *WORK* IS CONSIDERED COMPLETED:

Page 1 of 3                                                    6018BN
©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

(a) IF IT HAS BEEN ABANDONED; OR

(b) IF IT HAS NOT BEEN ABANDONED, THEN AT THE EARLIEST OF THE FOLLOWING TIMES:
   (i) WHEN THAT PART OF THE *WORK* DONE AT A JOB SITE HAS BEEN PUT TO ITS INTENDED USE BY ANY *PERSON* OR ORGANIZATION OTHER THAN ANOTHER CONTRACTOR OR SUBCONTRACTOR WORKING ON THE SAME PROJECT;
   (ii) WHEN ALL OF THE *WORK* TO BE DONE AT THE LOCATION WHERE THE DAMAGES AROSE HAS BEEN FINISHED, OR
   (iii) WHEN ALL OF THE *WORK* CALLED FOR IN *YOUR* CONTRACT HAS BEEN FINISHED.

   *WORK* IS CONSIDERED COMPLETED REGARDLESS OF WHETHER ADDITIONAL SERVICING, MAINTENANCE, CORRECTION, REPAIR, OR REPLACEMENT IS REQUIRED.

(4) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES RESULTING FROM:
   (a) THE HANDLING OF PROPERTY BEFORE IT IS MOVED FROM THE PLACE WHERE IT IS ACCEPTED BY THE *IN-SURED* FOR MOVEMENT INTO OR ONTO A VEHICLE FOR WHICH THE *INSURED* IS PROVIDED LIABILITY

Page 2 of 3
©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

COVERAGE BY THIS POLICY;

   (b) THE HANDLING OF PROPERTY AFTER IT IS MOVED FROM THE VEHICLE DESCRIBED IN (a) ABOVE TO THE PLACE WHERE IT IS FINALLY DELIVERED BY THE *INSURED*; OR

   (c) THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DESCRIBED IN (a) ABOVE.

(5) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY IN-JURY* OR PROPERTY DAMAGE CAUSED BY *POLLUTANTS* THAT:
   (a) ARE TRANSPORTED BY;
   (b) ARE CARRIED IN OR UPON;
   (c) ARE RELEASED, DISCHARGED, OR REMOVED FROM; OR
   (d) ESCAPE OR LEAK FROM

   ANY MOTOR VEHICLE.

(6) THERE IS NO COVERAGE FOR AN *INSURED* FOR ANY CLAIM MADE OR LAWSUIT FILED BY ANY *PERSON*, ORGANIZATION, OR GOVERNMENTAL BODY AGAINST THAT *IN-SURED* FOR DAMAGES, RESPONSE COSTS, OR SIMILAR COSTS, OR ANY RELATED REMEDIAL ACTION THAT ARE:
   (a) THE REAL OR ALLEGED RESULT OF THE EFFECTS OF *POLLUTANTS*; OR

Page 2 of 3                                                    6018BN

Exhibit 1
57

Policy Number: 460 3444-A15-75A

PLEASE ATTACH TO YOUR POLICY BOOKLET

(b) IN ANY WAY ASSOCIATED WITH THE COST OF:

(i) CLEANUP;

(ii) REMOVAL;

(iii) CONTAINMENT; OR

(iv) NEUTRALIZATION OF THE EFFECTS

OF *POLLUTANTS*.

Exclusions (5) and (6) above do not apply if the *bodily injury* or property damage is the direct, accidental, and instantaneous result of a *collision* which arises out of the use of any vehicle as a motor vehicle for which that *insured* is provided Liability Coverage by this policy.

3. **MEDICAL PAYMENTS COVERAGE**

**Exclusions**

The following are added:

(1) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A *NON-OWNED CAR*.

(2) THERE IS NO COVERAGE FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE. This exclusion does not apply to equipment:

(a) mounted on the vehicle and designed solely for the loading or unloading of the vehicle; or

(b) designed for:

(i) snow removal;

(ii) street cleaning; or

(iii) road maintenance, other than construction or resurfacing.

4. **PHYSICAL DAMAGE COVERAGES**

**Exclusions**

The following is added:

THERE IS NO COVERAGE FOR LOSS TO A *NON-OWNED CAR*, A *NON-OWNED TRAILER*, OR A *NON-OWNED CAMPER*.

**6030EP BUSINESS NAMED INSURED**

This endorsement is a part of the policy. Because of the type of named insured shown on the Declarations Page of this policy and the changes made below, all references to *resident relatives* and *non-owned cars* in the policy are deleted. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

*You* or *Your* is changed to read:

*You* or *Your* means the named insured or named insureds shown on the Declarations Page.

2. **LIABILITY COVERAGE**

a. **Additional Definition**

*Insured* is changed to read:

*Insured* means:

1. *you* for:

a. the ownership, maintenance, or use of:

(1) *your car*;

(2) a *newly acquired car*; or

(3) a *trailer*; and

b. the maintenance or use of a *temporary substitute car*;

2. any *person* for his or her use of:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a car described in a., b., or c. above.

Such vehicle must be used with *your* permission, express or implied, and within the scope of that permission; and

3. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1. or 2. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

b. **Exclusions**

(1) Exclusion 5. is changed to read:

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

(2) Exclusion 7. is changed to read:

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. *you*; or

b. any of *your* agents, employees, or business partners

Exhibit 1
58

Case 2:20-cv-01342-SVW-PVC   Document 1-1   Filed 02/10/20   Page 54 of 85   Page ID #:59

Policy Number: 460 3444-A15-75A
Sheet 2 of 3

PLEASE ATTACH TO YOUR POLICY BOOKLET

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(3) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES RESULTING FROM:

1. THE HANDLING OF PROPERTY BEFORE IT IS MOVED FROM THE PLACE WHERE IT IS ACCEPTED BY THE *IN-SURED* FOR MOVE-MENT INTO OR ONTO A VEHICLE FOR WHICH THE *INSURED* IS PRO-VIDED LIABILITY COV-ERAGE BY THIS POLICY;

2. THE HANDLING OF PROPERTY AFTER IT IS MOVED FROM THE VEHICLE DESCRIBED IN 1. ABOVE TO THE PLACE WHERE IT IS FI-NALLY DELIVERED BY THE *INSURED*; OR

3. THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DE-SCRIBED IN 1. ABOVE.

3. **MEDICAL PAYMENTS COVERAGE**

a. **Additional Definitions**

*Insured* is changed to read:

*Insured* means any *person* while *occupying*:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*; or

4. a *trailer* while attached to a *car* described in 1., 2., or 3. above.

Such vehicle must be used within the scope of *your* consent.

b. **Exclusions**

(1) Exclusion 1. is deleted.

(2) Exclusion 4. is changed to read:

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE;

(3) Exclusion 5. is changed to read:

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EM-PLOYMENT IN OR EN-GAGEMENT OF ANY KIND IN A *CAR BUSI-NESS*. This exclusion does not apply to any of *your*:

a. agents;

b. employees; or

c. business partners

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(4) Exclusions 7. and 9. are deleted.

4. **UNINSURED MOTOR VEHICLE COVERAGE**

a. **Additional Definitions**

*Insured* is changed to read:

*Insured* means:

1. any *person* while *occupying*:

a. *your car*;

b. a *newly acquired car*; or

c. a *temporary substitute car*.

Such vehicle must be used within the scope of *your* con-sent. Such *person occupying* a public or livery conveyance is not an *insured*; and

2. *you* or any *person* entitled to re-cover compensatory damages as a result of *bodily injury* to an *insured* defined in item 1. above.

b. **Exclusions**

Exclusion 2. is deleted.

5. **PHYSICAL DAMAGE COVERAGES**

**Additional Definitions**

a. *Covered Vehicle* is changed to read:

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*; and

4. a *camper* that is designed to be mounted on a pickup truck and is shown on the Declarations Page;

including its parts and its equip-ment that are common to the use of the vehicle as a vehicle. However, parts and equipment of campers must be securely fixed as a perma-nent part of the camper.

b. *Insured* is changed to read:

*Insured* means *you*.

---

Page 2 of 3
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011                 6030EP

Page 3 of 3
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011                 6030EP

−54−

**Exhibit 1**
**59**

Policy Number: 460 3444-A15-75A

PLEASE ATTACH TO YOUR POLICY BOOKLET

### 6031DD ANNUAL POLICY PERIOD

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

**GENERAL TERMS**

When Coverage Applies is changed to read:

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of twelve months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

Page 1 of 1  6031DD
©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

### 6126MD EXCESS COVERAGE FOR PERSONAL VEHICLE SHARING

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

**1. LIABILITY COVERAGE**

a. Exclusions

Exclusion 15. is replaced by the following:

THERE IS NO COVERAGE FOR AN *INSURED* FOR THE OWNERSHIP, MAINTENANCE, OR USE OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*. This exclusion does not apply to *you* and *resident relatives* when, and only if, the full amount of all available limits of all other liability bonds, policies, and self-insurance plans that apply have been used up by payment of judgments or settlements, or have been offered in writing.

b. If Other Liability Coverage Applies

The first paragraph of item 2. is changed to read:

The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it, except while *your car* or a *trailer* attached to it is used in *personal vehicle sharing*. The Liability Coverage provided by this policy applies as excess coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it while *your car* or a *trailer* attached to it is used in *personal vehicle sharing*.

**2. MEDICAL PAYMENTS COVERAGE**

a. Exclusions

(1) Exclusion 3. is replaced by the following:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED OR LEASED TO OTHERS BY AN *INSURED*. This exclusion does not apply to *you* and *resident relatives* while *occupying your car* or a *newly acquired car* while used in *personal vehicle sharing* when, and only if, the full amount of all available limits of all other sources of medical payments coverage or similar vehicle insurance that apply have been paid.

(2) Exclusion 15. is replaced by the following:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*. This exclusion does not apply to *you* and *resident relatives* when, and only if, the full amount of all available limits of all other sources of medical payments coverage or similar vehicle insurance that apply have been paid.

Page 1 of 3  6126MD
©, Copyright, State Farm Mutual Automobile Insurance Company, 2013

Exhibit 1
60

Policy Number: 460 3444-A15-75A
Sheet 3 of 3

PLEASE ATTACH TO YOUR POLICY BOOKLET

**b. If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

The first paragraph of item 3. is changed to read:

The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it, except while *your car* or a *trailer* attached to it is used in *personal vehicle sharing*. The Medical Payments Coverage provided by this policy applies as excess coverage for *you* and *resident relatives* who sustain *bodily injury* while *occupying your car* or a *trailer* attached to it while *your car* or a *trailer* attached to it is used in *personal vehicle sharing*.

**3. UNINSURED MOTOR VEHICLE COVERAGE**

a. Exclusions

Exclusion 6. is replaced by the following:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*. This exclusion does not apply to *you* and *resident relatives* when, and only if, the full amount of all available limits of all other sources of uninsured motor vehicle coverage that apply have been paid.

**b. If Other Uninsured Motor Vehicle Coverage Applies**

The first paragraph of item 2. is changed to read:

The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*, except while *your car* is used in *personal vehicle sharing*. The Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for *you* and *resident relatives* who sustain *bodily injury* while *occupying your car* while *your car* is used in *personal vehicle sharing*.

**4. PHYSICAL DAMAGE COVERAGES**

a. Exclusions

(1) Exclusion 2. is replaced by the following:

THERE IS NO COVERAGE FOR ANY *COVERED VEHICLE* WHILE IT IS RENTED OR LEASED TO OTHERS BY AN *INSURED*. This exclusion does not apply to *your car* or a *newly acquired car* while used in *personal vehicle sharing* when, and only if, the full amount of all available limits of all other sources of physical damage coverage or similar coverage that apply have been paid.

(2) Exclusion 20. is replaced by the following:

THERE IS NO COVERAGE FOR *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*. This exclusion does not apply when, and only if, the full amount of all available limits of all other sources of physical damage coverage or similar coverage that apply have been paid.

**b. If Other Physical Damage Coverage or Similar Coverage Applies**

The first paragraph of item 3. is changed to read:

The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*, except while *your car* is used in *personal vehicle sharing*. The physical damage coverages provided by this policy apply as excess coverage for a *loss* to *your car* while it is used in *personal vehicle sharing*.

-56-

Exhibit 1
61

Policy Number: 460 3444-A15-75A

PLEASE ATTACH TO YOUR POLICY BOOKLET

## 6289DW SINGLE LIMIT LIABILITY COVERAGE

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

**LIABILITY COVERAGE**

The Limits provision is replaced by the following:

**Limit**

1. The Liability Coverage limit is shown on the Declarations Page under "Liability Coverage – Limit – Each Accident".

2. The limit shown is the most *we* will pay for all damages resulting from any one accident.

3. This Liability Coverage limit shall be reduced by payments for *bodily injury* damages made to or for the *insured* under the Uninsured Motor Vehicle Coverage of this policy.

4. This Liability Coverage limit is the most *we* will pay regardless of the number of:
   a. *insureds*;
   b. claims made;
   c. vehicles insured; or
   d. vehicles involved in the accident.

5. If the *insured* must provide the limits required by a motor vehicle compulsory insurance, financial responsibility, motor carrier or similar law, then the limit provided by this policy will be applied

   Regardless of such requirements, *we* will not pay more than the limit shown on the Declarations Page.

## 6771BD AMENDMENT OF NONRENEWAL AND CANCELLATION

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

**GENERAL TERMS**

1. Item 8. is changed to read:

   8. Nonrenewal

      If *we* decide not to renew this policy, then, at least 60 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

2. Item 9.b. is changed to read:

   9. Cancellation

      b. **How and When We May Cancel**

         *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

         (1) If *we* mail or deliver a cancellation notice:

             (a) during the first 59 days following this policy's effective date;

             (b) because the premium is not paid when due; or

             (c) because of fraud,

             then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

             Otherwise, the date cancellation is effective will be at least 30 days after the date *we* mail or deliver the cancellation notice.

         (2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

             (a) the premium is not paid when due; or

             (b) the cancellation is for any other reason allowed by California law.

–57–

**Exhibit 1**
**62**

| DATE RECEIVED BY DMV | | | MOTOR CARRIER (CA) # |
|---|---|---|---|

**DMV**
*A Public Service Agency*

**6037T.2 CERTIFICATE OF INSURANCE**
Motor Carriers of Property

| INSURER (INSURANCE COMPANY) (NAME, ADDRESS, AND PHONE #) | NAIC # | Status: |
|---|---|---|
| | OTHER # | ☐ Licensed to write insurance in the State of California (Admitted Insurer) |
| | | ☐ Nonadmitted Insurer subject to Section 1763 of the California Insurance Code. _____ SURPLUS LINE BROKER NAME |
| NAME OF INSURER'S AUTHORIZED REPRESENTATIVE _____ | | ☐ Charitable Risk Pool |
| INSURED (MOTOR CARRIER NAME AND ADDRESS) | | Filed with the: California Department of Motor Vehicles Motor Carrier Permit Branch P. O. Box 932370   MS G875 Sacramento, CA 94232-3700 (916) 657-8153 |

*Insurer certifies* that the motor carrier of property identified herein (Insured) is covered by an insurance policy providing bodily injury or death liability, property damage liability insurance, or Workers' Compensation Insurance within the coverage limits identified below and as required by California Vehicle Code sections 34630, 34631.5, 34640, and by Part 387 of Title 49 of the Code of Federal Regulations.

| TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|
| **PRIMARY LIABILITY** | | | COMBINED SINGLE LIMIT | $ |
| ☐ Coverage below statutory minimum limits. | | | BODILY INJURY OR DEATH (ONE PERSON) | $ |
| ☐ Coverage equal to or exceeding statutory minimum limits. | | | BODILY INJURY OR DEATH (MORE THAN ONE PERSON) | $ |
| | | | PROPERTY DAMAGE | $ |
| **EXCESS LIABILITY** | | | COMBINED SINGLE LIMIT | $_____ in excess of $_____ |
| ☐ Coverage between primary coverage and statutory minimum limits. | | | BODILY INJURY (ONE PERSON) | $_____ in excess of $_____ |
| ☐ Coverage provided at or above statutory minimum limits. | | | BODILY INJURY OR DEATH (MORE THAN ONE PERSON) | $_____ in excess of $_____ |
| | | | PROPERTY DAMAGE | $_____ in excess of $_____ |
| **WORKERS' COMPENSATION** | | | ☐ WC Statutory Limits | |

*Insurer certifies* that this insurance policy covers all vehicles used in conducting the service performed by the Insured for which a motor carrier permit is required whether or not said vehicle is listed in the insurance policy.

*Insurer certifies* that a fully executed Endorsement, on a form authorized by the Department of Motor Vehicles (DMV), is attached to the referenced policy, to conform the policy to the requirements of the Motor Carriers of Property Permit Act (California Vehicle Code Section 34600 and following) and the rules and regulations of the DMV. (This provision does not apply to Workers' Compensation Insurance.)

*Insurer agrees* that this Certificate of Insurance shall not be canceled on less than thirty (30) days notice from the Insurer to the DMV, written on an authorized Notice of Cancellation form and that the thirty (30) day/period commences to run from the date of the Notice of Cancellation was actually received at the office of the California Department of Motor Vehicles, Motor Carrier Permit Branch in Sacramento, California.

*Insurer agrees* to furnish DMV with a duplicate original of the referenced policy, DMV authorized endorsement, and all other related endorsements and documentation upon request.

*Insurer agrees* that for the purposes of Charitable Risk Pool Coverage that this policy meets the requirements of subdivision (b) of the CVC Section 16054.2.

*By signing this form, the Insurer certifies under penalty of perjury under the laws of the State of California that all information contained in this Certificate of Insurance is true and correct.*

| EXECUTED AT (CITY, STATE) | DATE |
|---|---|

SIGNATURE OF INSURER'S AUTHORIZED REPRESENTATIVE

X _____

DMV 65 MCP (REV. 7/2002)

6037T.2

58

**Exhibit 1**
**63**

**6018CD COMMERCIAL VEHICLE**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

    a. *Trailer* is changed to read:

    *Trailer* means:

    1. a trailer:

        a. designed to be pulled by a *private passenger car*;

        b. not designed to carry *persons*;

        c. while not used as premises for office, store, or display purposes; and

        d. while used for pleasure; or

    2. a farm implement or farm wagon while pulled on public roads by a *car*.

    b. The following definitions are added:

    (a) *Collision* means:

        i. a vehicle hitting or being hit by another vehicle or another object; or

        ii. the overturning of a vehicle.

    (b) *Pollutants* means any solid, liquid or gaseous irritant or contaminant, toxic substance, hazardous substance, or oil in any form.

    (c) *Work* means any work or operations performed by or on behalf of an *insured* including:

        i. any materials, parts, or equipment furnished in connection with such work or operations; and

        ii. any warranties or representations made at any time with respect to the fitness, quality,

durability, or performance of such work or operations of the items described in i. above.

2. **LIABILITY COVERAGE**

    a. **Additional Definition**

    Item 1.b.(1) of the definition of *insured* is deleted.

    b. **Exclusions**

    The following definitions are added:

    (1) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE. This exclusion does not apply to equipment:

        (a) mounted on the vehicle and designed solely for the loading or unloading of the vehicle; or

        (b) designed for:

            i. snow removal;

            ii. street cleaning; or

            iii. road maintenance, other than construction or resurfacing.

    (2) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF *WORK* AFTER IT IS CONSIDERED COMPLETED. *WORK* IS CONSIDERED COMPLETED:

        (a) IF IT HAS BEEN ABANDONED; OR

Page 1 of 6                                          6018CD
©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

**Exhibit 1**
**64**

(

(

(b) IF IT HAS NOT BEEN ABANDONED, THEN AT THE EARLIEST OF THE FOLLOWING TIMES:

   i. WHEN THAT PART OF THE **WORK** DONE AT A JOB SITE HAS BEEN PUT TO ITS INTENDED USE BY ANY **PERSON** · OR ORGANIZATION OTHER THAN ANOTHER CONTRACTOR OR SUBCONTRACTOR WORKING ON THE SAME PROJECT;

   ii. WHEN ALL OF THE **WORK** TO BE DONE AT THE LOCATION WHERE THE DAMAGES AROSE HAS BEEN FINISHED; OR

   iii. WHEN ALL OF THE **WORK** CALLED FOR IN **YOUR** CONTRACT HAS BEEN FINISHED.

**WORK** IS CONSIDERED COMPLETED REGARDLESS OF WHETHER ADDITIONAL SERVICING, MAINTENANCE, CORRECTION, REPAIR, OR REPLACEMENT IS REQUIRED.

(3) THERE IS NO COVERAGE FOR AN **INSURED** FOR DAMAGES RESULTING FROM:

(a) THE HANDLING OF PROPERTY BEFORE IT IS MOVED FROM THE PLACE WHERE IT IS ACCEPTED BY THE **INSURED** FOR MOVEMENT INTO OR ONTO A VEHICLE FOR WHICH THE **INSURED** IS PROVIDED LIABILITY COVERAGE BY THIS POLICY;

(b) THE HANDLING OF PROPERTY AFTER IT IS MOVED FROM THE VEHICLE DESCRIBED IN (a) ABOVE TO THE PLACE WHERE IT IS FINALLY DELIVERED BY THE **INSURED**; OR

(c) THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DESCRIBED IN (a) ABOVE.

(4) THERE IS NO COVERAGE FOR AN **INSURED** FOR **BODILY INJURY** OR DAMAGE TO PROPERTY CAUSED BY **POLLUTANTS** THAT:

(a) ARE TRANSPORTED BY;

(b) ARE CARRIED IN OR UPON;

(c) ARE RELEASED, DISCHARGED, OR REMOVED FROM; OR

(d) ESCAPE OR LEAK FROM

ANY VEHICLE. This exclusion does not apply if the **bodily injury** or damage to property is the direct, accidental, and instantaneous result of **pollutants** caused by a **collision** which arises out of the use of any vehicle as a vehicle for which that **insured** is provided Liability Coverage by this policy.

(5) THERE IS NO COVERAGE FOR AN **INSURED** FOR ANY CLAIM MADE OR LAWSUIT FILED BY ANY **PERSON**, ORGANIZATION, OR GOVERNMENTAL BODY AGAINST THAT **INSURED** FOR DAMAGES, RESPONSE COSTS, OR SIMILAR COSTS,

©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

-60-

Exhibit 1
65

OR ANY RELATED REMEDIAL ACTION THAT ARE:

(a) THE REAL OR ALLEGED RESULT OF THE EFFECTS OF *POLLUTANTS*; OR

(b) IN ANY WAY ASSOCIATED WITH THE COST OF:

   i. CLEANUP;

   ii. REMOVAL;

   iii. CONTAINMENT; OR

   iv. NEUTRALIZATION OF THE EFFECTS

OF *POLLUTANTS*.

This exclusion does not apply if such damages, costs, or remedial action is the direct, accidental, and instantaneous result of *pollutants* caused by a *collision* which arises out of the use of any vehicle as a vehicle for which that *insured* is provided Liability Coverage by this policy.

(6) THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE:

(a) HANDLING OR USE OF, OR

(b) EXISTENCE OF ANY CONDITION IN OR WARRANTY OF

ANY PRODUCT MANUFACTURED, SOLD, OR DISTRIBUTED BY AN *INSURED* IF THE *BODILY INJURY* OR DAMAGE TO PROPERTY OCCURS AFTER THE *INSURED* RELINQUISHES POSSESSION OF THE PRODUCT.

(7) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY INJURY* TO ANY *PERSON* OR DAMAGE TO ANY PROPERTY WHICH ARISES OUT OF ANY

VEHICLE WHILE PARKED AND FUNCTIONING AS AN OFFICE OR BUSINESS PREMISES. This exclusion does not apply:

(a) to the loading and unloading of equipment or supplies; or

(b) if such vehicle is maintained primarily to transport persons or cargo.

3. **MEDICAL PAYMENTS COVERAGE**

a. **Additional Definitions**

   Item 1.a.(4) of the definition of *insured* is deleted.

b. **Exclusions**

   The following are added:

   (1) THERE IS NO COVERAGE FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE. This exclusion does not apply to equipment:

   (a) mounted on the vehicle and designed solely for the loading or unloading of the vehicle; or

   (b) designed for:

       . i.  snow removal;

       ii.  street cleaning; or

       iii. road maintenance, other than construction or resurfacing.

   (2) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY INJURY* ARISING OUT OF *WORK* AFTER IT IS CONSIDERED COMPLETED. *WORK* IS CONSIDERED COMPLETED:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2014
6018CD

−61−

**Exhibit 1**
**66**

(a) IF IT HAS BEEN ABANDONED; OR

(b) IF IT HAS NOT BEEN ABANDONED, THEN AT THE EARLIEST OF THE FOLLOWING TIMES:

   i. WHEN THAT PART OF THE *WORK* DONE AT A JOB SITE HAS BEEN PUT TO ITS INTENDED USE BY ANY *PERSON* OR ORGANIZATION OTHER THAN ANOTHER CONTRACTOR OR SUBCONTRACTOR WORKING ON THE SAME PROJECT;

   ii. WHEN ALL OF THE *WORK* TO BE DONE AT THE LOCATION WHERE THE DAMAGES AROSE HAS BEEN FINISHED; OR

   iii. WHEN ALL OF THE *WORK* CALLED FOR IN *YOUR* CONTRACT HAS BEEN FINISHED.

*WORK* IS CONSIDERED COMPLETED REGARDLESS OF WHETHER ADDITIONAL SERVICING, MAINTENANCE, CORRECTION, REPAIR, OR REPLACEMENT IS REQUIRED.

(3) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY INJURY* RESULTING FROM:

(a) THE HANDLING OF PROPERTY BEFORE IT IS MOVED FROM THE PLACE WHERE IT IS ACCEPTED BY THE *INSURED* FOR MOVEMENT INTO OR ONTO A VEHICLE FOR WHICH THE *INSURED* IS PROVIDED MEDICAL PAYMENTS COVERAGE BY THIS POLICY;

(b) THE HANDLING OF PROPERTY AFTER IT IS MOVED FROM THE VEHICLE DESCRIBED IN (a) ABOVE TO THE PLACE WHERE IT IS FINALLY DELIVERED BY THE *INSURED*; OR

(c) THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DESCRIBED IN (a) ABOVE.

(4) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY INJURY* CAUSED BY *POLLUTANTS* THAT:

(a) ARE TRANSPORTED BY;

(b) ARE CARRIED IN OR UPON;

(c) ARE RELEASED, DISCHARGED, OR REMOVED FROM; OR

(d) ESCAPE OR LEAK FROM

ANY VEHICLE. This exclusion does not apply if the *bodily injury* is the direct, accidental, and instantaneous result of *pollutants* caused by a *collision* which arises out of the use of any vehicle as a vehicle for which that *insured* is provided Medical Payments Coverage by this policy.

(5) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY INJURY* ARISING OUT OF THE:

(a) HANDLING OR USE OF, OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

6018CD

**Exhibit 1**
**67**

(b) EXISTENCE OF ANY CON-DITION IN OR WARRANTY OF

ANY PRODUCT MANUFAC-TURED, SOLD, OR DISTRIB-UTED BY AN *INSURED* IF THE *BODILY INJURY* OCCURS AF-TER THE *INSURED* RELIN-QUISHES POSSESSION OF THE PRODUCT.

(6) THERE IS NO COVERAGE FOR AN *INSURED* FOR *BODILY IN-JURY* WHICH ARISES OUT OF ANY VEHICLE WHILE PARKED AND FUNCTIONING AS AN OFFICE OR BUSINESS PREM-ISES. This exclusion does not ap-ply:

(a) to the loading and unloading of equipment or supplies; or

(b) if such vehicle is maintained primarily to transport persons or cargo.

## 4. PHYSICAL DAMAGE COVERAGES

### a. Additional Definitions

(1) *Covered Vehicle* is changed to mean:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*; and

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

including its parts and its equip-ment that are common to the use of the vehicle as a vehicle and its *spe-cial equipment*. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

(2) The following is added:

*Special equipment* means:

1. parts and equipment not common to the use of the vehicle as a vehicle that are:

a. securely fixed as a permanent part of the *covered vehicle*; or

b. designed to be:

(1) pushed by a *cov-ered vehicle*; or

(2) towed by a *covered vehicle* but only if a description of the towed equipment is shown immediately following the title "Special Equip-ment" on the Dec-larations Page;

2. parts and accessories de-signed to be attached to the equipment described in 1.a. and 1.b. above; and

3. tools that are provided by the manufacturer and are specifically designed to op-erate and maintain the equipment described in 1.a. and 1.b. above.

### b. Limits and Loss Settlement – Com-prehensive Coverage and Collision Coverage

The following are added:

(1) *You* agree with *us* that if *special equipment* is either:

(a) not damaged, or

Page 5 of 6
©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

6018CD

Exhibit 1
68

(b) damaged and *we* offer to pay the cost to repair it, subject to (2) below,

then *we* may pay the cost to remove the *special equipment* from the *covered vehicle* and install it in a replacement vehicle. If *we* choose to remove *special equipment*, then the amount of *our* payment for the *covered vehicle* will not include the dollar value of the *special equipment*.

(2) Special Equipment – Replacement Cost

If there is a dollar amount shown on the Declarations Page for *special equipment*, then item 1. under **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** applies to determine the amount that *we* will pay for the *covered vehicle*, except to determine the amount *we* will pay for the repair or replacement of that *special equipment*. *We* have the right to choose to pay either the cost to repair or the cost to replace that *special equipment*. However, the most *we* will pay to repair or to replace *special equipment*, including removal and installation costs, is the dollar amount shown on the Declarations Page for *special equipment*.

(a) The cost to repair will be determined by:

i. the cost agreed to by both *you* and *us*; or

ii. a bid or repair estimate approved by *us*.

The cost to repair such *special equipment* does not include any reduction in the value of the *special equipment* after it has been repaired, as compared to its value before it was damaged.

(b) The cost to replace will be determined by the replacement cost of the same or of similar *special equipment* agreed to by both *you* and *us*. If there is disagreement as to the replacement cost of the *special equipment*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the procedures described in 1.b.(1) under **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage.**

If *we* choose to replace *special equipment*, then *we* will pay the actual cash value of that *special equipment* until it is replaced. If the *special equipment* is replaced, then *we* will also pay the lesser of:

i. the cost incurred to replace that *special equipment* less the amount *we* already paid for that *special equipment*; or

ii. the replacement cost agreed to by both *you* and *us* less the amount *we* already paid for that *special equipment*.

The damaged *special equipment* must be given to *us* in exchange for *our* payment, unless *we* agree that *you* or the owner may keep it. If *you* or the owner keeps the *special equipment*, then *our* payment will be reduced by the dollar value of the *special equipment* after the *loss*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

6018CD

–64–

**Exhibit 1**
**69**

## 6030GF BUSINESS NAMED INSURED

This endorsement is a part of the policy. **Because of the type of named insured shown on the Declarations Page of this policy and the changes made below, all references to** *resident relatives* **and** *non-owned cars* **in the policy are deleted.** Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

    *You* or *Your* is changed to read:

    > *You* or *Your* means the named insured or named insureds shown on the Declarations Page.

2. **LIABILITY COVERAGE**

    a. **Additional Definition**

    *Insured* is changed to read:

    *Insured* means:

    1. *you* for:

        a. the ownership, maintenance, or use of:

            (1) *your car*;

            (2) a *newly acquired car*; or

            (3) a *trailer*; and

        b. the maintenance or use of a *temporary substitute car*;

    2. any *person* for his or her use of:

        a. *your car*;

        b. a *newly acquired car*;

        c. a *temporary substitute car*; or

        d. a *trailer* while attached to a *car* described in a., b., or c. above.

        Such vehicle must be used with *your* permission, express or implied, and within the scope of that permission; and

3. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1. or 2. above, but only for such vicarious liability. This provision applies only if the vehicle is:

    a. neither *owned by*, nor hired by, that other *person* or organization; and

    b. neither available for, nor being used for, carrying *persons* for a charge.

    *Insured* does not include the United States of America or any of its agencies.

    b. **Exclusions**

    (1) Exclusion 5. is changed to read:

    > FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

    (2) Exclusion 7. is changed to read:

    > WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
    >
    > a. *you*; or

Page 1 of 3                                6030GF
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

**Exhibit 1**
**70**

b. any of *your* agents, employees, or business partners

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

(3) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES RESULTING FROM:

1. THE HANDLING OF PROPERTY BEFORE IT IS MOVED FROM THE PLACE WHERE IT IS ACCEPTED BY THE *IN-SURED* FOR MOVE-MENT INTO OR ONTO A VEHICLE FOR WHICH THE *INSURED* IS PRO-VIDED LIABILITY COV-ERAGE BY THIS POLICY;

2. THE HANDLING OF PROPERTY AFTER IT IS MOVED FROM THE VEHICLE DESCRIBED IN 1. ABOVE TO THE PLACE WHERE IT IS FI-NALLY DELIVERED BY THE *INSURED*; OR

3. THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DE-SCRIBED IN 1. ABOVE.

3. **MEDICAL PAYMENTS COVERAGE**

a. **Additional Definitions**

*Insured* is changed to read:

*Insured* means any *person* while *occupying*:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*; or

4. a *trailer* while attached to a *car* described in 1., 2., or 3. above.

Such vehicle must be used within the scope of *your* consent.

b. **Exclusions**

(1) Exclusion 1. is deleted.

(2) Exclusion 4. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

TO CARRY *PERSONS* FOR A CHARGE;

(3) Exclusion 5. is changed to read:

WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSI-NESS*. This exclusion does not apply to any of *your*:

a. agents;

b. employees; or

c. business partners

while maintaining or using *your car*, a *newly acquired car*, a

6030GF

−66−

**Exhibit 1**
**71**

*temporary substitute car,* or a *trailer owned by you;*

(4) Exclusions 7. and 9. are deleted.

4. **UNINSURED MOTOR VEHICLE COVERAGE**

   a.  **Additional Definitions**

     *Insured* is changed to read:

     *Insured* means:

      1.  any *person* while *occupying:*

        a.  *your car;*

        b.  a *newly acquired car;* or

        c.  a *temporary substitute car.*

        Such vehicle must be used within the scope of *your* consent. Such *person occupying* a public or livery conveyance is not an *insured;* and

      2.  *you* or any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* defined in item 1. above.

   b.  **Exclusions**

     Exclusion 2. is deleted.

5. **PHYSICAL DAMAGE COVERAGES**

   **Additional Definitions**

   a.  *Covered Vehicle* is changed to read:

     *Covered Vehicle* means:

      1.  *your car;*

      2.  a *newly acquired car;*

      3.  a *temporary substitute car;* and

      4.  a camper that is designed to be mounted on a pickup truck and is shown on the Declarations Page;

     including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of campers must be securely fixed as a permanent part of the camper.

   b.  *Insured* is changed to read:

     *Insured* means *you.*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015
6030GF

**Exhibit 1**

**72**

## 6128AC AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

   a. **Additional Definitions**

   Item 4. of *Insured* is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. **Exclusions**

   (1) Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

   (2) The exception to exclusion 10. is changed to read:

   This exclusion does not apply to damage to a:

   a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

   b. residence while rented to or leased to an *insured*; or

   c. private garage while rented to or leased to an *insured*;

Page 1 of 5
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

6128AC

Exhibit 1
73

( (

3. **MEDICAL PAYMENTS COVERAGE**

**Exclusions**

Exclusion 4. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

4. **PHYSICAL DAMAGE COVERAGES**

a. The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expenses** is changed to read:

**Car Rental Expense**

*We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

**Exhibit 1**
**74**

(c) seven days after *we* offer to pay for the *loss* if the vehicle is:

    (i) a total loss as determined by *us*; or

    (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY *COVERED VEHICLE* WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

5. **INSURED'S DUTIES**

a. Item 7.a.(3) is changed to read:

A *person* making claim under:

  a. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

    (3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other information *we* deem necessary to substantiate the claim.

Such authorizations must not:

(a) restrict *us* from performing *our* business functions in:

    (i) obtaining records, bills, information, and data; nor

    (ii) using or retaining records, bills, information, and data collected or received by *us*;

(b) require *us* to violate federal or state laws or regulations;

(c) prevent *us* from fulfilling *our* data reporting and data retention obligations to insurance regulators; or

(d) prevent *us* from disclosing claim information and data:

    (i) to enable performance of *our* business functions;

    (ii) to meet *our* reporting obligations to insurance regulators;

    (iii) to meet *our* reporting obligations to insurance data consolidators; and

    (iv) as otherwise permitted by law.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

6128AC

−70−

**Exhibit 1**

**75**

*us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

b. The following is added to item 7.:

A *person* making claim under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must submit to *us* all information *we* need to comply with federal and state laws and regulations.

## 6. GENERAL TERMS

a. The following is added to **Newly Owned or Newly Leased Car**:

If a *resident relative* wants to insure a *car* newly *owned by* the *resident relative* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then the *resident relative* must apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by* the *resident relative*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b. The following are added to **GENERAL TERMS**:

### Electronic Delivery

With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and

Page 4 of 5                6128AC

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

**Exhibit 1**
**76**

any of the information described in item b.(3)(b) above:

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

6128AC

**Exhibit 1**

**77**

# EXHIBIT C

**Exhibit 1**
**78**

CUSTOMER COPY

# Rental Agreement Cover Sheet



24/7 Roadside Assistance:
1-800-526-0798

**Rental Agreement #:59619290**

|  |  |
|---|---|
| Created by: | N.VARGAS |
| Completed by: | A.ANTONY |
| Entered At: | 0071-69 |
| Status: | COMPLETED |

COMMERCIAL LOCAL

|  |  |
|---|---|
| Pick Up Date: | 05/05/17 08:59 AM |
| Expected Drop-Off: | 05/06/17 08:59 AM |
| Actual Drop-Off: | 05/05/17 03:30 PM |
| End Bill Date | 05/05/17 03:30 PM |
| Batch: | 2945 on 05/05/17 |

**CUSTOMER INFORMATION**

Acct: 36LE3600 - 0071
L&L TRUCKING
275 E REDONDO BEACH BLVD
GARDENA, CA 90248-2342 USA
Day (310) 527-2599
Eve (562) 513-4682
Fax (310) 527-6558

**PICK UP/DROP OFF LOCATION**

ROSE'S TRUCK RENTAL (0071-69)
3655 E ANAHEIM ST
**NO INBOUNDS**
LONG BEACH, CA 90804     USA
Voice (562) 439-8873
Fax (562) 498-7830

RIVER NAME(S): DAVID SOLIS                                                    TRAVEL SCOPE: Intrastate

his lessor cooperates with all Federal, State, and local law enforcement officials nationwide to provide the identity of customers who operate this rental CMV

NIT INFORMATION

nit #:126119                              Max. Payload: 9,551 lbs.                      Rented With Damage: NO
026 - 26FT SAD MEDIUM VAN       Height: 13 ft.6 in.                             Returned With Damage: YES
cense #: 2360397                                                                          Mileage Out: 45,344

cense State: IN                                                                              Mileage In: 45,507

cense Exp: 04/30/2018                                                                   Fuel Out: FULL

wning Location: 0202-10                                                              Fuel In: 5/8

NO HAZARDOUS MATERIAL BEING TRANSPORTED

PTIONAL PROTECTION PLANS

| mited Damage Waiver/LDW $1000 Responsibility | *ACCEPTED* |
|---|---|
| ates: $758.33/Month       $175.00/Week | $25.00/Day |

| mited Damage Waiver/LDW $5000 Responsibility | *DECLINED* |
|---|---|
| ability Coverage/LIABILITY ACCIDENT INSURANCE | *PENSKE PROVIDES* |
| ates: $606.66/Month       $140.00/Week | $20.00/Day |

upplemental Liability                                    *DECLINED*

HIS CONTRACT OFFERS, FOR ADDITIONAL CHARGE OPTIONAL VEHICLE PROTECTION TO COVER YOUR FINANC
ESPONSIBILITY FOR DAMAGE OR LOSS TO THE RENTAL VEHICLE. THE PURCHASE OF OPTIONAL VEHICLE PROTECT
S OPTIONAL AND MAY BE DECLINED. YOU ARE ADVISED TO CAREFULLY CONSIDER WHETHER TO PURCHASE T
ROTECTION IF YOU HAVE A RENTAL VEHICLE COLLISION COVERAGE PROVIDED BY YOUR CREDIT CARD
UTOMOBILE INSURANCE POLICY. BEFORE DECIDING WHETHER TO PURCHASE OPTIONAL VEHICLE PROTECTION, Y
IAY WISH TO DETERMINE WHETHER YOUR CREDIT CARD OR VEHICLE INSURANCE AFFORDS YOU COVERAGE I
AMAGE TO THE RENTAL VEHICLE AND THE AMOUNT OF DEDUCTIBLE UNDER SUCH COVERAGE.

Page 1

EXHIBIT C

**Exhibit 1**
**79**

CUSTOMER COPY

**PENSKE**

24/7 Roadside Assistance:
1-800-526-0798

# Rental Agreement Cover Sheet

**Rental Agreement #:59619290**

COMMERCIAL LOCAL

| | | | |
|---|---|---|---|
| Created by: | N.VARGAS | Pick Up Date: | 05/05/17 08:59 AM |
| Completed by: | A.ANTONY | Expected Drop-Off: | 05/08/17 08:59 AM |
| Entered At: | 0071-69 | Actual Drop-Off: | 05/05/17 03:30 PM |
| Status: | COMPLETED | End Bill Date | 05/05/17 03:30 PM |
| Customer Name: | L&L TRUCKING | Batch: | 2945 on 05/05/17 |
| Created On: | 05/05/17 03:44 PM | Changed On: | 05/05/17 10:56 PM |

## ILLING INFORMATION

voice #:                    PO #:                              Billing Cycle: Unknown

ill Start Date:05/05/17 08:59 AM

emit To: PENSKE TRUCK LEASING CO.,L.P. - P.O.BOX 7429 PASADENA, CA 91109-7429 USA

### HARGES

| ype | | | Quantity | Unit of Meas | Rate | Charg |
|---|---|---|---|---|---|---|
| nit #:126119 | | | | | | |
| | | | 1 | Day | $105.00 | $105.C |
| lileage | Out: 45,344 | In: 45,507 | 163 | Miles | $0.1500 | $24.4 |
| dw $1000 Responsibility | | | 1 | Day | $25.00 | $25.C |
| ability Accident Insurance | | | 1 | Day | $20.00 | $20.C |
| ehicle Licensing Recovery Fee | | | 1 Day @ $3.00 | | | $3.C |
| nvironmental fee | | | 1 Day @ $3.00 | | | $3.C |
| ccident Damage Rebill | | | 1 | EA | $0.00 | $0.C |
| iesel Fuel | | | 30 | Gallons | $7.00 | $210.C |
| | | | | | SUBTOTAL: | $390.4 |

### AXES

| | | |
|---|---|---|
| A SALES TAX | | $20.4 |
| | TOTAL DUE: | $410.9 |

### AYMENTS AND REFUNDS

| ay Type | Trans | Date | Card # | Approval Code | |
|---|---|---|---|---|---|
| I | PYMT | 05/05/2017 | xxxxxxxxxxx8401 | 024511 on 05/05/2017 | ($246.0( |
| I | PYMT | 05/05/2017 | xxxxxxxxxxx8401 | 055618 on 05/05/2017 | ($164.9: |
| | | | | PAYMENT: | ($410.9: |
| | | | | NET DUE: | $0.C |

OBACCO SMOKE IS NOT PERMITTED IN RENTAL VEHICLES.  BY SIGNING THIS AGREEMENT, CUSTOMER AGR
O REIMBURSE PENSKE FOR ALL REASONABLE COSTS AND DAMAGES ARISING OUT OF CUSTOMER'S USE
OBACCO PRODUCTS IN THE RENTAL VEHICLE, INCLUDING WITHOUT LIMITATION, COSTS INCURRED TO CLI
HE INTERIOR PORTIONS OF THE RENTAL VEHICLE TO REMOVE RESIDUAL TOBACCO ODORS.

ustomer acknowledges that Customer has read, or been given an opportunity to read, the Rental Agreement, including this Cover Sheet
eneral Terms and Conditions, as well as any attachments hereto and agrees to be fully bound by its terms.  To the extent the Customer
urchased Limited Damage Waiver coverage, Customer acknowledges reading, understanding, and agreeing with the disclosures, exclusions,
rms and conditions applicable to Limited Damage Waiver as set forth in Attachment D to the Rental Agreement.

By: _____

Customer/Authorized Signatory

**Exhibit 1
80**

# EXHIBIT D

**Exhibit 1**
**81**

©2015 Penske Truck Leasing
Form 1524-980 752.4M (7/15) Pkg 100 R

# Problems?

In the unlikely event of a breakdown or accident, we're here to help. Just call our emergency assistance team and provide the following information:

Your name

Truck number

Nature of concern

Current vehicle location

Cell or accessible phone number to reach you

## Penske 24/7 Roadside Assistance

# 1-800-526-0798

EXHIBIT D

−77−

**Exhibit 1**
**82**



Rental
Leasing
Logistics

# Truck
# Rental
# Agreement

Customer
Name:

Truck #:

Towing #:

**Exhibit 1**

**83**

## RENTAL AGREEMENT TERMS AND CONDITIONS

These Rental Agreement Terms and Conditions are made a part of and incorporated into the accompanying Cover Sheet, which together, along with any attachments hereto, shall constitute the "Rental Agreement" between PENSKE TRUCK LEASING CO., L.P., a Delaware Limited Partnership, with an address at Route 10, Green Hills, P.O. Box 563, Reading, PA 19603 (hereinafter "Penske"), and Customer, as defined below (Penske and Customer are sometimes collectively referred to as the "Parties").

Background. Penske rents the Vehicle(s) to Customer subject to the terms and conditions set forth in this Rental Agreement and, in consideration thereof, Customer agrees to the following:

### I. GENERAL PROVISIONS

A. Definitions. The following terms are used throughout this Rental Agreement and shall have the following meaning unless the context clearly indicates otherwise:

1. Customer. "Customer" shall be construed to mean any party signing, electronically or otherwise, this Rental Agreement and any other party to whom the charges incurred are billed. Customer shall include any agents, servants or employees of Customer who operate or ride in any Vehicle or who are otherwise involved in the Rental and subject to the exclusive direction and control of Customer.

2. Commercial Rental. "Commercial Rental" shall mean the rental of a Vehicle for the movement of (a) commercial or business goods that are not personal in nature; or (b) goods owned by someone other than Customer for which Customer is to be compensated for moving.

3. Household Rental. "Household Rental" shall mean the rental of a Vehicle to be used in the movement of household goods owned by Customer, or members of Customer's immediate family, for which Customer is not compensated for moving.

4. Intellectual Property. "Intellectual Property" shall mean Penske's technology and intellectual property assets, including, without limitation, any trade secrets, trademarks, trade names, service marks, service names, patents, copyrights, computer programs, hardware and software (including any applications or registrations for intellectual property protection for any of the foregoing), as well as any inventions, designs, configurations, processes, know-how, proprietary information and formulae, and any and all components of the foregoing, regardless of form.

5. Mileage and Fuel Tax Documents. "Mileage and Fuel Tax Documents" shall mean driver trip reports and original fuel purchase receipts.

6. Motor Fuels Use Tax. "Motor Fuel Use Tax" shall mean taxes imposed under the International Fuel Tax Agreement "IFTA" or state specific fuel use tax regulations. The calculation for the tax is in conformance with IFTA or state requirements.

7. Rental. "Rental" shall mean the period of time beginning when Customer picks up the Vehicle until the Vehicle is placed back in Penske's possession.

8. Rental Agreement. This "Rental Agreement" consists of the Cover Sheet, these general Terms and Conditions and any attachments hereto.

9. Vehicle. "Vehicle" shall mean the truck, tractor or trailer identified in this Rental Agreement and all tires, tools, accessories and equipment attached thereto or contained therein. Use of the term "Vehicle" in the singular should not exclude the plural "Vehicles."

10. Weight Distance Tax. "Weight Distance Tax" shall mean taxes based upon the vehicle weight and the miles traveled within the state imposing the tax.

B. Term. This Rental Agreement shall commence at the pick-up time indicated on the Cover Sheet and shall continue until the Vehicle has been returned to Penske, or until back in the possession of Penske.

C. Ownership and Intellectual Property. This Rental Agreement is solely for use of the rented Vehicle only. Customer shall have no express, implied or apparent authority to create or assume, in Penske's name or on its behalf, any obligation, or to act or purport to act as Penske's agent. Nothing contained in this Rental Agreement shall be construed to create the relationship of partnership or joint venture between the Parties. Customer acquires no rights other than the right to use Vehicle in accordance with this Rental Agreement. Customer shall have no claim or right to ownership or use of Penske's Intellectual Property and this Rental Agreement does not constitute consent or authority for Customer to use Penske's Intellectual Property in any capacity outside the scope of this Rental Agreement.

### II. RENTAL AND OTHER CHARGES

A. Rental Charges. Customer shall pay Penske, on demand, the sum of: (1) all charges specified on the Cover Sheet; (2) all other sums due under this Rental Agreement; (3) applicable state and local sales, use and gross receipt taxes on the Rental, or the amount charged by Penske as reimbursement for taxes paid, ton mileage, road use, or similar taxes; (4) Penske's costs, including reasonable attorney's fees, incurred in collecting payments due from Customer, dealing with an Event of Default, cleaning the Vehicle and/or gaining custody of the Vehicle; and (5) all fines, tolls, penalties, forfeitures, court costs, and other expenses assessed against Penske, arising out of the violation of any law, rule or regulation with respect to Customer's possession, operation or use of Vehicle. Customer and any operator of a Vehicle shall be jointly and severally liable for any and all charges and obligations set forth herein. Should Customer fail to pay Penske in accordance with this Rental Agreement, Customer agrees to pay Penske interest on such delinquent amounts, until paid in full,

−79−

Exhibit 1
84

at the maximum legal rate allowable or 18% per annum, whichever is less. The Parties agree that the interest charges are designed to compensate Penske for the inconvenience of such charge not being paid and shall not be construed as a penalty.

    1. Minimal Charge. The minimal charge to rent a Vehicle under this Rental Agreement will be the rental rate plus mileage charges, if applicable. All charges are subject to Penske's final audit. If, upon final audit, an error is found in an earlier calculation, Customer, upon notice from Penske, shall be responsible for paying the corrected charges. Accordingly, Customer authorizes Penske to correct any charge-card vouchers (if applicable) signed by Customer to reflect the correct charges.

    2. Mileage Calculation. Mileage for the Rental shall be determined by reading the Vehicle's factory-installed odometer and shall be charged at the per mile rate (if applicable) identified on the Cover Sheet.

B. Mechanical Damage. Unless otherwise covered by the Limited Damage Waiver identified in Section VI.A.4., Customer agrees to pay for any mechanical or other damage to the Vehicle caused by Customer's failure to maintain adequate engine oil level and pressure and adequate fluid levels (including, but not limited to, water and antifreeze); misuse, unlawful use or by reason of any other neglect of necessary servicing or maintenance of Vehicle while being rented to Customer or under Customer's care, custody or control. Customer will promptly return the Vehicle to Penske, at the location and time specified by Penske, for any inspection and maintenance that may be required by Penske. Customer also agrees to pay for all towing expenses, if the Vehicle becomes stuck (in mud, snow or otherwise) and all expenses incurred to start-up the Vehicle if Customer failed to use an engine heating device, if installed. Customer shall not make any alterations or modifications to the Vehicle.

C. Breakdown of Vehicle. Customer assumes full responsibility for any additional expenses or losses incurred by reason of a breakdown of Vehicle, whether or not causing a delay enroute, including, but not limited to, storage, towing, Penske SOS and subsistence expenses. In the event of any Vehicle replacement for any reason, Penske may, at its option, terminate this Rental Agreement and any replacement Vehicle shall be rented under the terms of a new Rental Agreement.

D. On Board Technology. The Vehicle may be equipped with certain on board technology such as GPS systems, antennas, transceiver boxes or other related equipment ("On Board Technology"). Customer agrees not to tamper with On Board Technology and agrees to be responsible for any and all damage or theft to such On Board Technology which occurs during the Rental, regardless of cause.

E. Unauthorized Charges. Customer agrees to pay or reimburse Penske for any unauthorized purchases, including, but not limited to, fuel, repairs, materials and service obtained through use of the Penske fuel-stop program. Penske must pre-approve any service to, or replacement of, a part or accessory to the Vehicle.

F. Fines and Penalties. Customer agrees to pay fines and penalties in connection with all parking, traffic, operating and moving violations relating to the Vehicle during the Rental. In addition, Customer shall be responsible for the payment of any and all tolls associated with the use and operation of the Vehicle during the Rental, and for the payment of any and all fines, fees, costs or expenses related to toll evasion or any other traffic violations. In addition, Customer agrees to pay for all special fees or taxes required by any law or regulation, including, but not limited to, trip permits or licenses.

G. Driver Trip Reports. Customer must submit weekly Mileage and Fuel Tax Documents. Customer shall pay the Motor Fuels Use Tax and Weight Distance Tax attributable to Customer's use of the Vehicle. If applicable, Penske shall prepare and file Motor Fuel Use Tax and Weight Distance Tax returns, based upon Customer's submission of Mileage and Fuel Tax Documents and any other information necessary for the preparation of the tax returns. In the event Customer fails to submit the Mileage and Fuel Tax Documents, Penske shall calculate the Customer's mileage and fuel tax liability based upon such information as is available to Penske. Customer's Motor Fuels Use Tax and Weight Distance Tax obligation shall be billed to Customer as an additional charge. Customer shall pay such obligation per the terms of this Rental Agreement.

H. Security. If Customer is required to pay a security deposit as a condition of a Rental ("Security Deposit"), Penske shall hold the Security Deposit as security for Customer's full and faithful performance of all of its obligations under this Agreement. Customer shall not be entitled to any interest on the Security Deposit, and Penske may commingle the Security Deposit with its other funds. If Customer shall default in the performance of any of its obligations under this Agreement, Penske may (but shall not be obligated to) apply all or any portion of the Security Deposit to the damages sustained by Penske as a result of or to cure such default. Penske's application of the Security Deposit pursuant to the preceding sentence shall not be construed as an agreement to limit the amount of Penske's claim or as a waiver of any damage resulting from Customer's default. If Penske applies any amount of the Security Deposit as a result of a Customer breach, Customer agrees to reimburse Penske in the applied amount within ten (10) days after a request by Penske. If Customer shall fully perform and comply with all of the terms and conditions of this Agreement, Penske shall then return the remaining Security Deposit within a reasonable time after Customer returns all Vehicles to Penske.

Failure to provide a timely Security Deposit may require Customer to pick up the Vehicle at a different location or result in Penske cancelling the reservation.

Exhibit 1
85

J. Cancellation Fee. If a Customer cancels any Rental within two days of the beginning of the Rental, Customer agrees to pay a $100.00 cancellation fee upon request by Penske. This fee shall not be construed as a penalty but as a charge that is designed to offset Penske's expense in securing the Vehicle for Rental.

### III. CONDITION AND USE OF VEHICLE

A. Condition of Vehicle. Customer acknowledges that Customer has examined the Vehicle and confirms that it is clean and in good condition, except as otherwise noted on the Rental Agreement or any attached Penske inspection report.

B. Permitted Use. Customer shall use the Vehicle only for its intended purpose of transporting goods and in compliance with all applicable laws, rules and regulations. Customer agrees to remain in possession of such Vehicle and not abandon the Vehicle at any time during the Rental.

C. Authorized Operators of Vehicle.

1. Household Rentals. Authorized operators for Household Rentals shall be limited to Customer and persons 18 or more years of age who are: (i) members of the immediate family of Customer and who permanently reside in Customer's household, or (ii) are listed as additional operators on the Rental Agreement.

2. Commercial Rentals. Authorized operators for Commercial Rentals shall be limited to: (i) Customer and any partners, officers, employees and contractors of Customer and (ii) additional authorized operator(s) as approved by Penske in writing. Customer will not surrender the use of the Vehicle to anyone other than a Penske approved operator.

For both Household and Commercial Rentals, any authorized operator shall be properly licensed by one of the United States or Provinces of Canada;

D. Limitations on Use. During the Rental and unless otherwise determined by Penske, Customer shall have exclusive possession, control and use of the Vehicle. Customer shall not use or permit the Vehicle to be used in any of the following circumstances: (1) in violation of this Rental Agreement; (2) to carry persons other than drivers or helpers employed by Customer (unless authorized by Penske in writing), and with such persons only riding within the cab of the Vehicle; (3) in circumstances where there are more passengers than seatbelts within the cab; (4) to tow boats, campers, trailers or other similar equipment or to tow any other vehicle unless (a) a coupling device is rented and installed by Penske and (b) Penske approves of the tow; (5) in a reckless or abusive manner; (6) off an improved road; (7) on an underinflated tire; (8) for the carrying or hauling of Explosives or Other Dangerous Articles as defined by regulations promulgated by the U.S. Department of Transportation; (9) for the transportation of "hazardous materials" (as defined by regulations promulgated by the United States Department of Transportation), including, but not limited to, gasoline or propane; (10) for the transportation of marijuana, whether for medicinal or other purposes; (11) while Customer or other Authorized Operator is under the influence of intoxicants, hallucinatory drugs, or narcotics; (12) in any race, test or contest or film; (13) in any way defamatory to Penske or in a way that puts Penske in a negative light; or (14) in an unlawful manner;

E. Storing Vehicle. While not in use, Customer agrees to store the Vehicle in a safe location and undertake reasonable precautions to guard against any theft of, or vandalism or mischief to, the Vehicle during the Rental.

### IV. RETURN OF VEHICLE & RESPONSIBILITY FOR DAMAGE

A. Obligations of Return. Customer shall return Vehicle to Penske in the same condition as received, except for ordinary wear, to the location where rented or to Penske's location listed on the Cover Sheet before or on the due date specified, unless the term of the Rental is extended by Penske and, then, no later than the extended due date. Failure to return the Vehicle when due shall constitute an Event of Default. Customer shall be responsible for all physical damage to the Vehicle during the Rental, regardless of cause and also for any downtime or loss of use in connection with any repairs.

B. Required Fuel Upon Return. Customer shall return the Vehicle with no less than the amount of fuel as when rented ("Threshold Amount"). Customer shall bear the sole risk of loss and expense for overfilling the Vehicle with more fuel than the Threshold Amount. If Customer does not return the Vehicle with at least the Threshold Amount of Fuel, Penske will charge Customer either: (1) For Consumer Rentals, the amount equal to the number of gallons necessary to fill the Vehicle to the Threshold Amount, multiplied by the price per gallon noted on the Cover Sheet; or (2) For Commercial Rentals, (i) the amount equal to the number of gallons necessary to fill the Vehicle to the Threshold Amount, multiplied by the price per gallon at the Penske location where the Vehicle was returned or, (ii) if the Penske location is not equipped to fuel the Vehicle, then the price per gallon Penske paid to refuel the Vehicle to the Threshold Amount, and/or (iii) as otherwise indicated on the Cover Sheet.

C. Diesel Exhaust Fluid. To the extent any Vehicle requires Diesel Exhaust Fluid (DEF), Customer agrees to pay for DEF, as needed, at Penske's rates then in effect, including any applicable taxes and fees. Charges for DEF will appear on the Cover Sheet.

– 81 –

Exhibit 1
86

D. Responsibility for Damage and Loss. Customer assumes the risk of loss of, or damage to, a Vehicles from any and every cause whatsoever, including, without limitation, casualty, collisior upset; fire, theft, malicious mischief, vandalism, graffiti, glass breakage, and mysteriou disappearance, except as otherwise set forth herein.

E. Repairs. All repairs of damage to a Vehicle shall be performed by Penske or its designor Customer shall pay to repair and restore the Vehicle to good working order (as determined b Penske), and if in Penske's judgment a Vehicle has been lost, stolen, destroyed, or damaged beyon repair, Customer shall pay Penske the fair market value of the Vehicle as reasonably determined b Penske. Upon Penske's receipt of such payment, this Rental Agreement shall terminate as to suc Vehicle, and the Vehicle shall become the property of Customer, as-is, where-is.

## V. DEFAULT AND REMEDIES

A. Event of Default. An "Event of Default" shall occur if Customer: (1) fails to pay any Charges whe due or fails to maintain any insurance coverage hereunder; (2) fails to perform any other term c this Rental Agreement; (3) abandons the Vehicle; (4) fails to comply with all applicable laws, rule and regulations; (5) fails to provide a deposit; or (6) makes any false representation or statemer either in this Rental Agreement or in connection with renting a Vehicle.

B. Remedies for Default. Upon the occurrence of an Event of Default, Penske shall not be require to perform its obligations under this Rental Agreement and may immediately terminate this Renta Agreement and take one or more of the following remedies:

1. Cancel a reservation;

2. Enforce the terms of this Rental Agreement and recover any direct, incidental, consequentia punitive, statutory or other damages from Customer including, but not limited to, downtim and loss of use;

3. Immediately take possession of and repossess the Vehicle without demand or notice and a Customer's expense. Customer waives prior notice, preseizure hearing and judicial process a: a condition precedent to such repossession. Moreover, Customer gives its consent for Pensk to enter upon Customer's premises to repossess the Vehicle, without being liable for trespass

4. Report the Vehicle stolen to law enforcement authorities if the Vehicle is not timely returner to Penske. Penske may issue and circulate theft notices, cause warrants to be issued, and/o take any other steps, which Penske shall reasonably deem necessary, to recover Vehicle; and

5. Charge Customer's credit card for any amounts Penske reasonably determines are owec under the Rental Agreement, even if the actual amount of such charges are not known at th time of Rental. Customer's renting of the Vehicle shall be sufficient consent for this charge Customer further consents to Penske charging any of Customer's credit cards that it has on file in connection with securing payment under this Rental Agreement.

C. Non Liability for Contents and Disposal of Property. Penske shall not be liable for loss of o damage to any property or cargo left, stored, loaded or transported by Customer or any othe person in relation to the Rental, regardless of cause (including the negligence of Penske). Custome assumes all risk of such loss or damage and waives all claims against Penske by reason thereof. If the Vehicle contains any property ("Customer Property") at the time the Vehicle is back ir Penske's possession (either by virtue of Customer returning the Vehicle or because the Vehicle was recovered by law enforcement or through Penske repossession) Penske is authorized to holc Customer Property for Customer or place it in storage for Customer, at Customer's sole cost and risk of loss or damage. Customer's failure to retrieve Customer Property within thirty (30) days of being notified by Penske, shall constitute Customer's abandonment of Customer Property, and Customer hereby waives any and all right or claim or ownership to such Customer Property. Customer hereby acknowledges that Penske may sell or otherwise dispose of any Customer Property deemed abandoned and accepts this advance disclosure as adequate notice thereof under any applicable law or regulation.

D. Confidentiality. Customer consents to Penske privacy policy located at http://www.gopenske. com/privacy.html which may be modified from time to time without notice to Customer. Customer further consents to Penske sharing Customer information: (1) with any Penske affiliate, including, but not limited to, for purposes of collection or judgment execution; and (2) with any governmental body or law enforcement authority, whether confidential or otherwise, in its possession, if reasonably requested by a governmental body or (3) in order to exercise any remedy for default.

E. Interest; Attorneys' Fees. Should Customer fail to pay any charges when due; Customer shall be liable for interest on such delinquent amounts at the rate of one and one-half percent (1.5%) per month or the maximum permissible rate allowed in the jurisdiction in which the Vehicle was rented, calculated from the date on which payment was due until paid, if Penske initiates legal action or consults with legal counsel as the result of an Event of Default, Penske shall be entitled to reimbursement from Customer of all expenses therefor, including reimbursement of reasonable attorneys' fees.

–82–

Exhibit 1
87

## VI. LIABILITY PROTECTION AND INSURANCE

Penske provides, requires, and offers a variety of risk mitigation programs, including insurance and a limited damage waiver, depending upon whether the Rental is a Household Rental or Consumer Rental.

### A. Household Rental

1. Liability Insurance. Penske agrees to provide liability protection for Customer and any Authorized Operator, and no others, subject to any limitations herein, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising from use of Vehicle as permitted by the Rental Agreement, with limits as required by the state financial responsibility law or other applicable statute. If a trailer, cargo handling equipment or any other equipment is furnished by Customer, no protection is provided for liability resulting from such Customer-furnished equipment. Coverage shall automatically conform to the basic requirements of any No-Fault Law which may be applicable, but does not include "uninsured/underinsured motorist," or "supplementary "No-Fault," or other optional protection, and the parties hereby reject, to the extent permitted by law, the inclusion of any such protection. Penske warrants that, to the extent permitted by law, the liability coverage described in this paragraph is primary as respects any other insurance available to Customer or any Authorized Operator as defined in this Rental Agreement.

2. Supplemental Liability Insurance. This is optional coverage Customer may elect to purchase. If Customer elects to purchase this coverage, it will be noted on the Cover Sheet and will be subject to the terms and conditions in Attachment A.

3. Cargo/Towing/Personal Accident Insurance. This is optional coverage Customer may elect to purchase. If Customer elects to purchase this coverage, it will be noted on the Cover Sheet and will be subject to the terms and conditions in Attachment B. This election will not provide coverage for loss or damage caused by hazardous materials.

4. Limited Damage Waiver. This is optional coverage Customer can purchase. It is not insurance, but rather an agreement with Penske which protects Customer from loss or damage to the Vehicle during the term of the Rental, subject to certain exceptions. If Customer elects to enroll in this program, it will be noted on the Cover Sheet and will be subject to the terms and conditions in Attachment D.

### B. Commercial Rental

1. Liability Insurance. Liability Insurance is required during the Rental. Customer may satisfy this requirement for Commercial Rentals by either electing the Penske provided Coverage or by providing its own coverage, subject to the requirements set forth herein. Customer's election of insurance will be noted on the Cover Sheet.

(i) Penske Provides Coverage. If Customer elects Penske Liability Coverage, Penske agrees to provide liability protection for Customer and any Authorized Operator, and no others, subject to any limitations herein, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising from use of Vehicle as permitted by the Rental Agreement, with limits as required by the state financial responsibility law or other applicable statute. Notwithstanding any provisions prohibiting non-Penske trailers, if a trailer, cargo handling equipment or any other equipment is furnished by Customer, no protection is provided for liability resulting from such Customer-furnished equipment. Coverage shall automatically conform to the basic requirements of any No-Fault Law which may be applicable, but does not include "uninsured/underinsured motorist," or supplementary "No-Fault," or other optional protection, and the parties hereby reject, to the extent permitted by law, the inclusion of any such protection. Penske warrants that, to the extent permitted by law, the liability coverage described in this paragraph is primary as respects any other insurance available to Customer or any Authorized Operator as defined in this Rental Agreement.

(ii) Customer Provides Coverage. If Customer elects to provide its own coverage, Customer shall, at its sole cost, provide liability coverage for Customer and Penske, and their respective agents, servants, contractors and employees, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which Vehicle is operated, against liability for bodily injury, including death, and property damage arising out of ownership, maintenance, use and operation of Vehicle with limits of a combined single limit of at least $1,000,000 per occurrence. Such coverage shall be primary and not in excess or contributory and shall be in conformity

−83−

Exhibit 1
88

with the basic requirements of the applicable No-Fault or Uninsured Motorist Laws. Such coverage shall name Penske as additional insured and shall be in a form acceptable to Penske. Customer shall deliver all policies of insurance, or evidence satisfactory to Penske of such coverage, prior to delivery of Vehicle to Customer. Each insurer shall agree, by endorsement upon the policy issued by it, or by an independent document provided to Penske, that it shall give Penske thirty (30) days prior written notice of the effective date of any alteration, modification or cancellation of such policy and that such notice shall be sent to Penske at Penske's address stated on the Cover Sheet.

2. Supplemental Liability Insurance. This is optional coverage Customer may elect to purchase to cover straight trucks only. If Customer elects to purchase this coverage, it will be noted on the Cover Sheet and will be subject to the terms and conditions in Attachment C.

3. Limited Damage Waiver. This is optional coverage Customer can purchase. It is not insurance, but rather an agreement with Penske which protects Customer from loss or damage to the Vehicle during the term of the Rental, subject to certain exceptions. If Customer elects to enroll in this program, it will be noted on the Cover Sheet and will be subject to the terms and conditions in Attachment D.

## VII. INDEMNIFICATION AND LIMITATION OF LIABILITY

### *** Disclaimers and Releases Contained in this Paragraph. Please Read Carefully ***

A. INDEMNIFICATION OF PENSKE. CUSTOMER SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS PENSKE AND ITS PARTNERS AND THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS, SERVANTS, REPRESENTATIVES AND EMPLOYEES FROM ANY AND ALL CLAIMS, SUITS, COSTS, LOSSES, DAMAGES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND LIABILITIES (EVEN IF PENSKE IS CLAIMED TO HAVE BEEN OR IS PROVEN TO BE NEGLIGENT) ARISING FROM: (1) CUSTOMER'S FAILURE TO COMPLY WITH ITS OBLIGATIONS TO GOVERNMENTAL BODIES HAVING JURISDICTION OVER CUSTOMER AND THE VEHICLE; (2) CUSTOMER'S FAILURE TO COMPLY WITH THE TERMS OF THIS RENTAL AGREEMENT; (3) ANY LIABILITY OR DISPUTE ARISING FROM PROPERTY LEFT IN A VEHICLE OR ABANDONED BY CUSTOMER AS SET FORTH HEREIN; (4) ANY LIABILITY IMPOSED UPON OR ASSUMED BY CUSTOMER UNDER ANY WORKER'S COMPENSATION ACT, PLAN OR CONTRACT AND ANY AND ALL INJURIES (INCLUDING DEATH) OR PROPERTY DAMAGE SUSTAINED BY CUSTOMER OR ANY DRIVER, AGENT, SERVANT OR EMPLOYEE OF CUSTOMER; (5) LOSS OR DAMAGE INCURRED BY PENSKE FROM CUSTOMER'S USE OF A VEHICLE, TRAILER OR ATTACHMENT NOT OWNED OR INSURED BY PENSKE; (6) CLAIMS ARISING OUT OF CUSTOMER'S NEGLIGENCE OR BREACH OF THIS RENTAL AGREEMENT; (7) PENSKE'S NEGLIGENCE; OR (8) CLAIMS WHICH ARISE OUT OF CUSTOMER'S MAINTENANCE, USE OR OPERATION OF THE VEHICLE. CUSTOMER'S OBLIGATIONS UNDER THIS INDEMNIFICATION SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS RENTAL AGREEMENT.

THE PARTIES AGREE THAT THE INDEMNIFICATION PROVISIONS HEREIN, AND THE SCOPE THEREOF, SHALL NOT BE MODIFIED, ABRIDGED OR OTHERWISE REDUCED BY ANY GOVERNING STATUTE, LAW, DECISION OR AUTHORITY (INCLUDING ANY PROVISIONS RELATED TO IMMUNITY) AND SHALL BE FULLY ENFORCED WITHOUT REGARD TO ANY LIABILITY LIMITS, IF APPLICABLE. TO THE EXTENT THERE IS ANY LAW THAT WOULD PROVIDE IMMUNITY TO CUSTOMER FOR ANY DAMAGES ARISING FROM ITS USE OF THE VEHICLE, SUCH PROTECTIONS ARE HEREBY WAIVED AND CUSTOMER REPRESENTS THAT IT HAS THE FULL AUTHORITY TO INDEMNIFY PENSKE. CUSTOMER AND ITS CARRIER SPECIFICALLY WAIVE ANY RIGHT, CLAIM OR ISSUE CHALLENGING SUCH ENFORCEMENT. THIS INDEMNIFICATION SHALL BE INTERPRETED AND ENFORCED UNDER GENERAL PRINCIPLES OF CONTRACT LAW.

B. DISCLAIMER OF LIABILITY AND RELEASE. PENSKE MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR ABSENCE OF ANY MANUFACTURING DEFECTS OF ANY VEHICLE UNDER THIS RENTAL AGREEMENT, REGARDLESS OF THE CAUSE THEREFORE (INCLUDING ANY NEGLIGENCE BY PENSKE). PENSKE AND ITS PARTNERS SHALL NOT BE LIABLE FOR, AND CUSTOMER HEREBY RELEASES PENSKE FROM, ALL CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE OR STATUTORY DAMAGES, INCLUDING, BUT NOT LIMITED TO: (1) CUSTOMER'S PROFITS OR BUSINESS; (2) LOSS OR DAMAGE TO CARGO, DRIVER'S TIME, COSTS RELATED TO ANY BREAKDOWN, OR FAILED RESERVATION; AND (3) FOR ANY PROPERTY LEFT, STORED, LOADED OR TRANSPORTED ON THE VEHICLE. CUSTOMER ASSUMES THE RISK OF ALL SUCH LOSS OR DAMAGE AND FULLY AND COMPLETELY WAIVES ANY AND ALL CLAIMS AGAINST PENSKE BY REASON THEREOF, REGARDLESS OF CAUSE.

-84-

Exhibit 1
89

## VIII. MISCELLANEOUS PROVISIONS

A. Non Assignment. Customer is not permitted to assign, transfer, convey or sublet any rights, dutie: and/or obligations set forth in this Rental Agreement.

B. Nondisparagement. Customer agrees not to, directly or indirectly, participate in, establish, or create individually or in concert with others, any communication which makes, represents, or advertises, by way of fact or opinion, any slanderous, libelous, injurious, disparaging or adverse statements about Penske, its partners, directors, employees, affiliates or assigns. Customer recognizes that engaging in such conduct is harmful to Penske's business to such an extent that monetary damages may not be an adequate remedy and, as a result, Customer hereby consents to the entry of any injunction agains Customer to prevent the dissemination or communication of any defamatory or injurious material o statements.

C. Authority. Customer acknowledges and agrees that this Rental Agreement is binding, and the signator on behalf of Customer is authorized to contract in Customer's name, incur obligations on its behalf and bind Customer to the terms of the Rental Agreement and any subsequent modifications thereto.

D. Substitute Vehicle. If a vehicle is provided to Customer as a substitute, replacement or additiona vehicle ("Extra Vehicle") pursuant to a Vehicle Lease Service Agreement or other Penske agreemen with Customer ("Underlying Agreement"), the terms of that Underlying Agreement shall control the Extra Vehicle, unless otherwise noted in the Underlying Agreement.

E. No Representations. The Parties represent and warrant that there have been no representation: or promises made by the other or their representatives on which they relied in connection with this Rental Agreement other than what is set forth herein.

F. Governing Law. This Rental Agreement shall be governed by and construed in accordance with the substantive law of the State of Delaware.

G. Full Agreement. This Rental Agreement constitutes the entire agreement and understanding between the Parties relating to the rental of a Vehicle and shall not be modified or altered except by written instrument duly executed by the Parties. This Rental Agreement supersedes any prior renta agreement between the Parties concerning the subject matter hereof.

H. Severability and State Riders. Should any clause, sentence, paragraph or other part of this Renta Agreement be finally adjudged by any court of competent jurisdiction to be unconstitutional, invalid or in any way unenforceable, such adjudication shall not affect, impair, invalidate or nullify the Renta Agreement in its entirety, but shall affect only the clause, sentence, paragraph or other parts so adjudged

I. Cooperation. Customer agrees to cooperate with Penske in connection with the defense or prosecution of any lawsuit or in dealing with any governmental authority. Penske cooperates with all Federal, State and local law enforcement officials which may include, without limitation, providing the identity o Customers who operate rental Vehicles and consenting to any search of any rental Vehicle.

The following State Riders shall apply and modify the Rental Agreement accordingly:

1. Michigan. Under Michigan law, Penske's liability for operation of the Vehicle is limited to $20,00C because of bodily injury to, or death of, one person in any one accident and $40,000 because of bodily injury to, or death of, two or more persons in any one accident, and only if the Vehicle is operated by Customer or other authorized driver(s) or by Customer's spouse, father, mother, brother, sister, son daughter, or other immediate family member. Customer may be liable to an injured person for amount: awarded in excess of the maximum amounts awarded against Penske described in this paragraph Customer may also be liable to Penske for the amounts set forth in this paragraph.

2. Florida. Failure to return property or equipment upon expiration of the rental period and failure to pay all amounts due (including costs for damage to the property or equipment) are prima facie evidence of the intent to defraud, punishable in accordance with Section 812.155, Florida Statutes.

3. Arizona. Pursuant to Section 13-1806 of the Arizona Criminal Code, Penske may report as stolen any Vehicle which has not been returned to Penske within 72 hours of the date and time of the Vehicle's scheduled or agreed upon return date. The maximum penalty a Customer may be subject to for failing to return the Vehicle as indicated above shall be a class 1 misdemeanor, carrying a penalty of up tc six months imprisonment, or the then current penalty or remedy prescribed by the Arizona legislature.
IN WITNESS WHEREOF, the parties hereto have signed this Rental Agreement or have caused same to be duly executed by their authorized signatories, on the date noted on the Cover Sheet.

−85−

**Exhibit 1**
**90**