Robert D. Brugge, Bar No. 92532
rdb@kpclegal.com
KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone:  (818) 547-5000
Facsimile:  (818) 547-5329

Attorneys for Plaintiff
State Farm Mutual Automobile Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Illinois corporation, | NO.   2:20-cv-01342-SVW (PVCx) |
| Plaintiff, | Date:                June 22, 2020<br>Time:                    1:30 p.m.<br>Ctrm:                        10A |
| v. | Judge:         Stephen V. Wilson<br>Date Action Filed: December 31, 2019<br>Removal Date:      February 10, 2020 |
| PENSKE TRUCK LEASING CO., L.P., a Delaware Limited Partnership; MELBA FERNANDEZ; OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania Corporation; and DOES 1 through 20, inclusive, | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  ITS  MOTION FOR SUMMARY JUDGMENT AGAINST PENSKE TRUCK LEASING CO., L.P. AND OLD REPUBLIC INSURANCE COMPANY |
| Defendants. | |

KNAPP,
PETERSEN
& CLARKE

-1-

4227956.1   00100/10772

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................ii

I.    INTRODUCTION ............................................................................... 2

II.   SUMMARY OF ARGUMENT............................................................ 3

III.  STATEMENT OF UNDISPUTED FACTS ..................................... 4

IV.  OTHER RELEVANT POLICY LANGUAGE .................................. 9

      A.    The State Farm Policy.................................................... 9

      B.    The Old Republic Policy............................................... 10

V.   LEGAL ARGUMENT ....................................................................... 13

      A.    Applicable Legal Standard............................................ 13

      B.    Penske's Commercial Customer Was Required to Have at Least $750,000 of Liability Protection ................................. 14

      C.    The 15/30 Dollar Limitations Penske Reads into "Penske Provides" Is Not Supported by the Contract as a Whole.................... 16

      D.    L & L Had a Reasonable Expectation of Coverage............................ 18

      E.    Penske Provides Coverage to L & L and Garcia Is Primary ...............20

      F.    The State Farm and Old Republic Policies Are Excess to Penske's Limits of $750,000 on a Pro-Rata Basis..............................22

VI.  CONCLUSION ............................................................................24

KNAPP,
PETERSEN
& CLARKE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*AIU Ins. Co. v. Sup.Ct. (FMC Corp.)*
    51 Cal.3d 807 (1990) ........................................................................ 17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ......................................................................... 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................... 13

*Crane v. State Farm Fire & Cas. Co.*
    5 Cal.3d 112 (1971) ......................................................................... 19

*Dart Indus., Inc. v. Commercial Union Ins. Co.,*
    28 Cal.4th 1059 (2002) .................................................................... 24

*Grand Rent A Car Corp. v. 20th Century Ins. Co.*
    25 Cal.App.4th 1242 (1994) ............................................................ 21

*Hardage v. CBS Broad. Inc.,*
    427 F.3d 1177 (9th Cir. 2005) ......................................................... 14

*Haynes v. Farmers Ins. Exchange*
    32 Cal.4th 1198 (2004) ............................................................. 17, 18

*Kazi v. State Farm Fire & Casualty Co.,*
    24 Cal.4th 871 (2001) ...................................................................... 19

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,*
    9 Cal.4th 27 (1994) .......................................................................... 19

*Lumberman's Mut. Cas. Co. v. Wyman*
    64 Cal.App.3d 252 (1976) ............................................................... 18

*Ponder v. Blue Cross of Southern California*
    145 Cal.App.3d 709 (1983) ............................................................. 18

*Safeco Ins. Co. of America v. Robert S.*
    26 Cal.4th 758 (2001) ................................................................ 16, 19

-ii-

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*State of California v. Continental Ins. Co.*
55 Cal.4th 186 (2012) ........................................................................... 19

*Swenson v. File*
3 Cal.3d 389 (1970) ............................................................................. 18

*Waller v. Truck Ins. Exch., Inc.*
11 Cal.4th 1 (1995) ....................................................................... 17, 19

**STATUTES**

California Ins. Code
§ 11580.9 (d) .................................................................... 3, 20, 21, 22

California Vehicle Code
§ 3461.5 .............................................................................. 3, 24
§ 34600 .............................................................................. 2, 12
§ 34601 .................................................................................. 14
§ 34631.5 ............................................................. 12, 15, 17, 18
§ 16050 et seq. ........................................................................ 2

Civ.Code
§ 1636 .......................................................................... 18, 19
§ 1638 .................................................................................. 18
§ 1641 .................................................................................. 17

**MISCELLANEOUS**

Fed. R. Civ. P.
56(c) ...................................................................................... 13

# I. INTRODUCTION

State Farm Mutual Automobile Insurance Company ("State Farm") brought its complaint for declaratory relief seeking a determination of the coverage limits available to potentially indemnify its insured L & L Logistics and Warehousing, Inc. ("L & L"), and its employee Jose Garcia, for claims arising from a May 5, 2017 traffic accident involving Melba Fernandez (the "Traffic Accident") and for bodily injury claims made by Ms. Fernandez in the Los Angeles Superior Court action styled *Melba Fernandez v. Jose Garcia, et al,* LASC Case no. 19STCV12981 (the "Fernandez Action").

One of the vehicles involved in the Traffic Accident was a 2016 Freightliner M2 ("Freightliner") that L & L rented from Penske Truck Leasing Company ("Penske") to temporarily replace L & L's owned, and the State Farm's insured, 2001GMC box truck.  L & L purchased the liability insurance coverage offered by Penske in connection with the Freightliner's rental. Penske provided insurance pursuant to written contract (the "Rental Agreement") that promised to be "**with limits as required by the state financial responsibility law or other applicable statute**."

The principal issue before this Court is whether the insurance sold by Penske to L & L to cover the commercial vehicle was the minimum $750,000 single limit coverage L & L was required to have under California's Motor Carriers of Property Permit Act, Vehicle Code section 34600 et seq., or the minimum limits of only $15,000 per person/$30,000 per accident required for private passenger vehicles under California Vehicle Code section 16050 et seq. The answer resolving this issue is clear. L & L, as a licensed motor carrier, rented a commercial vehicle having a gross weight in excess of $10,000 lbs. The applicable "financial liability law or other applicable statute" was the Motor Carrier of Property Permit Act which requires $750,000 in coverage for the rented truck.

A secondary issue is priority of payment among insurers. Penske's rental

KNAPP,
PETERSEN
& CLARKE

-2-

agreement states its insurance is primary, Penske has admitted its coverage is primary, and Penske's insurance is conclusively presumed primary under California Ins. Code section 11580.9 (d).  Moreover, Penske and Old Republic Insurance Company ("Old Republic") are currently defending L & L and Mr. Garcia in the Fernandez Action.

Sitting above the Penske layer of coverage is the State Farm Policy and Old Republic Policy.  L& L is an insured under the Old Republic Policy by virtue of its "Who Is an Insured" and "Blanket Additional Insured" endorsements. Pursuant to its terms, Old Republic provides primary coverage to L & L under its policy. State Farm's Policy's other insurance provision provides that it will pay on a pro rata basis with other excess insurance.

## II. SUMMARY OF ARGUMENT

There is no dispute Penske provided liability insurance to L &L and its driver. The issue is the limits of coverage purchased. It is Penske's obligation to state any limitation in coverage in plain, clear and conspicuous language. The Rental Agreement did not provide express language, let alone, plain clear and conspicuous language that Penske would provide a mere $15,000 in liability coverage. Viewed in a light most favorable to Penske, the Rental Agreement either omits words that Penske and Old Republic are now asking this Court to insert into the contract or contains an ambiguous insurance provision that is capable of two or more constructions. Ambiguous language must be interpreted in accordance with the insured's objective reasonable expectations.

L & L's objective reasonable expectation of coverage was that as a motor carrier of property, operating a commercial vehicle in excess of 10,000 pounds, it would be provided coverage up to the statutory amount of $750,000 mandated by Vehicle Code § 3461.5. It would not have been reasonable for L & L to expect minimum 15/30 limits of coverage mandated for private passenger vehicles. The Freightliner was not a consumer vehicle rental for moving household items. Indeed,

KNAPP, PETERSEN & CLARKE

-3-

the owner of  L & L was told by Penske's  rental agent, Rose's Truck Rentals ("Rose's"), that the liability insurance Penske was selling would meet his company's liability insurance requirements to lawfully operate a commercial vehicle on a California highway. Significantly, the Rental Agreement's additional provisions evidence a customer's reasonable expectation of coverage in limits of $1 million dollars.

The Rental Agreement gives the customer only two insurance options: (1) purchase the liability insurance offered by Penske or (2) obtain other  coverage for itself and Penske as follows:  "Customer shall, at its sole cost, provide liability coverage for Customer and Penske … with limits of a combined single limit of $1,000,000 per occurrence." Given this second option of having to provide Penske and itself $1 million coverage, a reasonable commercial motor carrier of property renting a 26,000 pound Freightliner would reasonably expect Penske to be selling equivalent limits of insurance. No reasonable commercial renter would expect private passenger vehicle limits of 15/30.

### III. STATEMENT OF UNDISPUTED FACTS

At the time of the date of the Traffic Accident more particularly described below, State Farm had in full force and effect a policy of automobile liability insurance, policy number 460 3444-A15-75A, issued to L & L as the named insured (the "State Farm Policy"), which listed a 2001 GMC Model C7H042 Box truck ("Insured Vehicle") as the described vehicle. (Uncontroverted Fact "UF" 1) On the same day Old Republic Insurance Company ("Old Republic") had a policy of commercial automobile insurance,  policy number ML 14804 11 issued to Penske (the "Old Republic Policy"). (UF 2.)

L & L is in the business of moving and storing property of others. (UF 3.)  As part of its business, L & L owned and owns a number of trucks. On occasion, L & L would rent additional trucks for purposes of its business.  (UF 4.)  On or about May 5, 2017, the Insured Vehicle was out of service due to a mechanical breakdown,

**KNAPP,
PETERSEN
& CLARKE**

-4-

requiring L & L to obtain an additional truck.  (UF 5.) L & L had rented Penske trucks from Rose's prior to May 5, 2017 and understood Rose's to have had a rental profile for L & L in its computer data base from which Rose's would create new rental agreements. (UF 6.)

L & L was a duly licensed motor carrier of property. (UF 7.)  Based on its owner's Lindsey Wayne Gatewood's many years of experience working in the motor carrier of property business, L &L understood it needed at least $750,000 of liability insurance  under State law to cover its trucks which were  in excess of a gross vehicle weight rating (GVWR) of 10,000 pounds. (UF 8.)[1]  In fact, L & L carried $1,000,000 of coverage from State Farm on the Insured Vehicle that was out for service on May 5, 2017. (UF10.)

On May 5, 2017, or a day earlier, L &L contacted Rose's for the purposes of renting a suitable replacement truck. L & L was told by Rose's employee Neal Vargas that the Freightliner would be available. (UF11.) The Freightliner would have a comparable cargo capacity to the Insured Vehicle and would have a GVWR far in excess of 10,000 lbs. (UF 12.)

 On May 5, 2017, and pursuant to the Rental Agreement, L & L rented the Freightliner, having a GVWR of approximately 26,000 pounds. (UF 13.)  The Rental Agreement described the Freightliner as a "2026- 26ft SAD MEDIUM VAN," height 13 feet, six inches, Max Payload 9,551 lbs., with license number 2360397. (UF 14.)

Prior to May 5, 2017, L & L would rent trucks from Rose's when it needed an additional truck or when one of L & L's trucks was out of service due to breakdown or repair. (UF15.) Because Mr. Gatewood was unsure whether L & L's State Farm policies covered rental trucks, he had set up L & L's rental profile in advance to select the $20 per day liability insurance option provided by Penske. (UF 16.)

---

[1] The GVWR is the unladen weight of the truck plus its maximum payload capacity (UF 9.)

KNAPP,
PETERSEN
& CLARKE

1   Pursuant to the Rental Agreement's provision "**VI. LIABILITY**
2   **PROTECTION AND INSURANCE,**" Penske *required* L & L to accept one of two
3   of the Liability Insurance plans offered: Penske Provides Coverage or Customer
4   Provides Coverage. (UF 17.)

5   Mr. Gatewood had had prior discussions with Mr. Vargas, and was told that if
6   L &L selected the Penske Provides Coverage insurance option it would satisfy L
7   &L's obligations to lawfully operate the rental truck in its business of transporting
8   cargo on a public highway. (UF18.)   At no time was Mr. Gatewood told that Penske
9   was only selling L & L  the minimum statutory amount for private passenger
10   vehicles of $15,000 each person/$30,000 each accident. (UF 19.) L& L would have
11   had no need to purchase a minimal private passenger policy from Penske. (UF 20.)

12   On May 5, 2017, L & L opted, as was its custom, for the Penske Provides
13   Coverage for which Penske was charged $20 per day. (UF 21.)

14   The coverage identified in the Rental Agreement as "Penske Provides" states
15   as follows:

16   1. <u>Liability Insurance</u>. Liability Insurance is required during the Rental.
17   Customer may satisfy this requirement for Commercial Rentals by
18   either electing the Penske provided Coverage or by providing its own
19   coverage, subject to the requirements set forth herein. Customer's
20   election of insurance will be noted on the Cover Sheet.

21   (i)  <u>Penske Provides Coverage</u>. If Customer elects Penske
22   Liability Coverage, Penske agrees to provide liability
23   protection for Customer and any Authorized Operator, and
24   no others, subject to any limitations herein, **in accordance**
25   **with the standard provisions of a basic automobile**
26   **liability insurance policy as required in the jurisdiction**
27   **in which the Vehicle is operated**, against liability for
28   bodily injury, including death, and property damage arising

KNAPP,
PETERSEN
& CLARKE

-6-

1   from use of Vehicle as permitted by the Rental Agreement,

2   **with limits as required by the state financial**

3   **responsibility law or other applicable statute.** [Bold

4   added.]

5   (UF 22.)

6       This provision further provides:

7       "Penske warrants that, to the extent permitted by law, the liability coverage

8   described in this paragraph **is primary as respects any other insurance available**

9   **to Customer or any Authorized Operator as defined in this Rental Agreement.**"

10   [Bold added] (UF 23.)

11       L & L did not choose the only other coverage option "Customer Provides

12   Coverage," because it would have required L & L to contact its insurance agent to

13   arrange for $1 million worth of insurance for Penske on very short notice. (UF24.)

14   That provision states:

15       (ii) <u>Customer Provides Coverage</u>. If Customer elects to

16   provide its own coverage, Customer shall, at its sole cost,

17   provide liability coverage for Customer and Penske**...in**

18   **accordance with the standard provisions of a basic**

19   **automobile liability insurance policy as required in the**

20   **jurisdiction** in which Vehicle is operated, against liability

21   for bodily injury, including death, and property damage

22   arising out of ownership, maintenance, use and operation of

23   Vehicle **with limits of a combined single limit of**

24   **$1,000,000 per occurrence.** Such coverage shall be

25   primary and not in excess or contributory and shall be in

26   conformity with the basic requirements of the applicable

27   No-Fault or Uninsured Motorist Laws. Such coverage shall

28   name Penske as additional insured and shall be in a form

**KNAPP,**
**PETERSEN**
**& CLARKE**

-7-

4227956.1   00100/10772

acceptable to Penske. Customer shall deliver all policies of
insurance, or evidence satisfactory to Penske of such
coverage, prior to delivery of Vehicle to Customer. Each
insurer shall agree, by endorsement upon the policy issued
by it, or by an independent document provided to Penske,
that it shall give Penske thirty (30) days prior written notice
of the effective date of any alteration, modification or
cancellation of such policy and that such notice shall be
sent to Penske at Penske's address stated on the Cover
Sheet. [Bold added.]

(UF 25.)

The Rental Agreement defined "Authorized Operator" to include "Customer and any . . . employees and contractors of Customer." (UF 26.)

It was L & L's custom and practice to sometimes send different drivers to pick up rental trucks at Rose's. (UF 27.) On or about May 5, 2017, L & L sent its employee Jose Garcia to pick up the vehicle.  (UF 28.) Rose's had on file a list of L & L's authorized drivers with drivers' license information. It was L & L's custom and practice that its designated driver would go to Rose's, show his driver's license so that he could be permitted to leave with the rented truck. (UF 29.)  At no time did Rose's ever communicate to L & L that Jose Garcia was not permitted to drive any of the Penske rental trucks.  (UF 30.)

While the Rental Agreement's Cover Sheet lists David Solis as the driver, L & L did not send Mr. Solis to Rose's on May 5, 2017 to pick up the truck. (UF 31.)  Mr. Gatewood is aware of prior occasions in which Rose's had listed a previous L & L driver on its Rental Agreement. (UF 32.)

On May 5, 2017, while the Freightliner was being operated by Mr. Garcia, the Freightliner was involved in the Traffic Accident which resulted in the Fernandez Action that named L & L, Mr. Garcia, Penske, and Rose's as defendants. (UF 33.)

KNAPP,
PETERSEN
& CLARKE

-8-

4227956.1   00100/10772

After the Fernandez Accident, Penske's adjusting company, Gallagher Basset initially took the position that Mr. Garcia was an unauthorized driver. (UF 34.) After L & L pointed out the error, Gallagher Basset reversed its position. (UF 35.)

Penske had admitted and conceded that the coverage provided by Penske through Penske Provides Coverage is primary coverage in relation to any other applicable coverage. (UF 36.) Its contention, however, has been that the liability coverage limit under the Rental Agreement is 15/30, the minimum limit mandated for automobiles rather than the $750,000 amount of coverage required by motor carriers of property weighing in excess of $10,000 pounds. (UF 37.)  Likewise the only insurance issue which Penske or Old Republic has ever raised in correspondence with Mr. Gatewood was the amount of liability coverage afforded to L & L. (UF 38.) Mr. Gatewood has never received any letter from Penske or Old Republic reserving their right to deny coverage. (UF 39.)

Penske and Old Republic are providing a defense to Mr. Garcia and L & L. (UF 40.)

### IV.  OTHER RELEVANT POLICY LANGUAGE

In addition to the insuring provisions contained in the Rental Agreement, the following is relevant policy language of the Old Republic Insurance Policy and State Farm.

### A.    The State Farm Policy

The State Farm Policy provided liability coverage in the amount of $1,000,000 and contained a Certificate of Insurance for Motor Carriers of Property form 6037T2. ("State Farm Motor Carriers Endorsement").  (UF 41.) The State Farm Motor Carriers Endorsement states the policy "covers all vehicles used in conducting the services performed by the insured for which a motor carrier permit is required whether or not said vehicle is listed in the insurance policy." (UF 42.)

///

///

KNAPP,
PETERSEN
& CLARKE

-9-

4227956.1   00100/10772

State Farm's Policy further provides under its main coverage grant as follows:

**If Other Liability Coverage Applies:**

3.      Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

    a. If:

    (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

    (2)     liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

    then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

(UF 43.)[2]

**B.    The Old Republic Policy**

The Old Republic policy form applicable to California is CA 0001(10-13). (UF 44.) This form, Business Auto Coverage Form, provides under "Other Insurance," section 5.a., that the policy provides primary insurance to autos owned by Penske. (UF 45.)  Under section 5.c. of the same coverage form, the policy provides that the coverage therein is primary for any liability assumed under an "insured contract." [3]  (UF 46.) Under 5.d., the Old Republic Policy provides:

---

[2] Paragraph 2 pertains to coverage "for the ownership, maintenance, or use of [the insured's] car" which is not relevant here.

[3] "Insured contract" is defined in H.6.:

(Continued...)

KNAPP,
PETERSEN
& CLARKE

> When this Coverage Form and any other Coverage Form or
> policy covers on the same basis, either excess or primary,
> we will pay only our share. Our share is the proportion that
> the Limit of Insurance of our Coverage Form bears to the
> total of the limits of all the Coverage Forms and policies
> covering on the same basis.

(UF 47.)

The Business Auto Coverage Form, at section II. A.1 defines "Insureds." (UF 48.) This definition is modified by endorsement, "Who is an Insured," to add:

> Both lessees and rentees of covered "autos" as "insureds",
> but only to the extent and for the limits of liability
> (insurance) agreed to under contractual agreement with the
> Named Insured.

(UF 49.)

The Old Republic Policy also contains a Blanket Additional Insured provision that provides as follows:

> It is agreed that such insurance as is afforded by the policy shall be provided under the policy provisions for additional insureds to any person or organization for which the Named Insured has:

> (1) agreed by written contract to provide the insurance
> stated in the policy

> * * *

---

(...Continued)

> That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

KNAPP,
PETERSEN
& CLARKE

-11-

4227956.1   00100/10772

With respect to any additional insured included in this

policy, it is agreed that the limit(s) of insurance afforded to

such additional insured shall be the greater of:

* * *

(2)   the limit(s) (limit(s) of insurance) set forth in any

contractual agreement between the Named Insured and

such additional insured, however

neither such agreement nor this endorsement shall in any

event extend the company's liability beyond the limit(s) of

insurance specified, or the types of "accident(s)",

"loss(es)", claim(s) or "suit(s)" indemnified (payable), in

this policy.

(UF 50.)

The Old Republic Policy further contains a Federal Motor Carrier endorsement, Form MCS-90, in the amount of $1,000,000 in coverage (UF 51) and a California endorsement for Motor Carriers of Property up to limits of $1,000,000. (UF 52.)

The Motor Carriers Endorsement states in pertinent part:

***This Endorsement shall be attached to and made a part of all policies insuring motor carriers of property required to obtain a permit pursuant to the Motor Carriers of Property Permit Act, commencing with California Vehicle Code section 34600. The purpose of this Endorsement is to assure compliance with the Act and related rules and regulations.***

**Insurer agrees to each of the following:**

- The coverage provided by the endorsement excludes any costs of defense or other expense that the policy provides.

- To pay, consistent with the minimum insurance coverage required by California Vehicle Code Section 34631.5, and consistent with the limits it provides herein, any legal liability of insured for bodily injury, death, or property damage arising out of the operation, maintenance, or use of any vehicle(s) for which a motor carrier permit is required, whether or

-12-

not such vehicle(s) is described in the attached policy.

- No provision, stipulation, or limitation contained in the attached policy or any endorsement shall relieve insurer from obligations arising out of this endorsement or the Act, regardless of the insured's financial solvency, indebtedness or bankruptcy.

(UF 53.)

The Motor Carriers Endorsement further provides:

**Insurer certifies to each of the following:**

> **This insurance policy covers all vehicles used in conducting the service performed by the Insured for which a motor carrier permit is required whether or not said vehicle(s) is listed in the insurance policy**.

(UF 54.)

## V.  LEGAL ARGUMENT

### A.    Applicable Legal Standard

Summary judgment is properly granted where no genuine issue exists as to any material fact, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party need not negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Instead, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 321, fn. 3 (citing Fed. R. Civ. P. 56(e)). The non-moving party must come forward with evidence to support his or her claims. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-252 (1986) (admissible evidence, not mere allegations, required to defeat summary judgment).

KNAPP,
PETERSEN
& CLARKE

-13-

4227956.1  00100/10772

1  Conclusory allegations are insufficient to defeat a motion for summary judgment. "If

2  the evidence is merely colorable, or is not significantly probative, summary judgment

3  may be granted." *Hardage v. CBS Broad. Inc*., 427 F.3d 1177, 1183 (9th Cir. 2005)

4  quoting *Anderson*, *supra*, 477 U.S. at 249-50.

5  **B.**  **Penske's Commercial Customer Was Required to Have at Least $750,000**

6      **of Liability Protection**

7      Vehicle Code §34601 provides in pertinent part:

8      (a) As used in this division, "motor carrier of property" means any

9      person who operates any commercial motor vehicle as defined in

10     subdivision (c). "Motor carrier of property" does not include a

11     household goods carrier... persons providing only transportation of

12     passengers, or a passenger stage corporation transporting baggage and

13     express upon a passenger vehicle incidental to the transportation of

14     passengers....

15  Subsection (c) defines "commercial motor vehicle" as follows:

16     (c) (1) As used in this division, except as provided in paragraph (2), a

17     "commercial motor vehicle" means any self-propelled vehicle listed in

18     subdivisions (a), (b), (f), (g), and (k) of Section 34500, any motor truck

19     of two or more axles that is more than 10,000 pounds gross vehicle

20     weight rating, and any other motor vehicle used to transport property for

21     compensation.

22  (Cal.Vehicle Code § 34601.)

23      Here there is no dispute that the Penske Truck was a "commercial motor

24  vehicle" as defined and that L & L, a commercial entity and a non- household goods

25  carrier, was a "motor carrier of property." (See UFs 3, 7, and 13.) The Rental

26  Agreement additionally defines a "commercial rental" as "the rental of a Vehicle for

27  the movement of (a) commercial or business goods that are not personal in nature; or

28  (b) goods owned by someone other than the customer for which the customer is to be

KNAPP,
PETERSEN
& CLARKE

-14-

compensated for moving." (Exhibit 3 to Joint Stipulation at p. 753.)  The Rental Agreement also provided for only two possible rentals: household and commercial (Exhibit 3 to Joint Stipulation at p. 757); the Rental Agreement Cover sheet acknowledges the rental was to be commercial. (Exhibit 3 to Joint Stipulation at p. 751).

As a "motor carrier of property," L & L was required by statute, while operating the Penske Truck, to maintain liability protection in the combined single limit amount of at least $750,000 on account of bodily injury. California Vehicle Code Section 34631.5 reads in pertinent part:

(a)(1) Every motor carrier of property as defined in Section 34601, except those subject to paragraph (2), (3), or (4), [4] shall provide and thereafter continue in effect adequate protection against liability imposed by law upon those carriers for the payment of damages in the amount of a combined single limit of not less than seven hundred and fifty thousand  on account of bodily injury to, or death of, one or more persons, or damage to or destruction of, property other than property being transported by the carrier for any shipper or consignee whether the property of one or more than one claimant in any one accident.

(Cal.Vehicle Code §34631.5.)

State Farm understands Penske's position to be that regardless of the statutory mandates requiring coverage for commercial vehicles in the amount of $750,000, there were only two options: L & L was *required* to: 1) purchase Penske's alleged 15/30 coverage (it defines to be the minimum financial responsibility or other statutory limit) or provide its own coverage with limits to itself and Penske with

---

[4] Paragraph 3 and 4 refer to motor carriers of property that transport petroleum and hazardous materials; paragraph 2 mandates that a motor carrier of property who operates a vehicle under 10,000 pounds gross vehicle weight rating carry insurance in the amount of $300,000.

KNAPP,
PETERSEN
& CLARKE

-15-

1 single limits of $1million. (See UF 37.)  The second option was not much of one

2 since this would require L & L to contact its insurance agent to arrange for

3 $1,000,000 worth of insurance for Penske on very short notice.   (See UF 20.)

4 **C.     The 15/30 Dollar Limitations Penske Reads into "Penske Provides" Is Not**

5 **Supported by the Contract as a Whole.**

6      State Farm understands Penske's position to be that the Penske Provides

7 Coverage phrase, "the *standard provisions of a basic automobile liability insurance*

8 *policy* as required in the jurisdiction" followed by the words "financial responsibility

9 law or other applicable statue" translates into an obligation to provide minimum

10 private passenger automobile insurance coverage limits of 15/30 to its customers.

11       Penske's position is a reach in that it equates "standard provisions" to

12 *coverage limits* mandated for automobiles thereby adding words that simply do not

13 exist.  This Court cannot read into the contract words that Penske has omitted.  *See*

14 *Safeco Ins. Co. of America v. Robert S.* 26 Cal.4th 758, 764 (2001) ["we cannot read

15 into the policy what Safeco has omitted. To do so would violate the fundamental

16 principle that in interpreting contracts, including insurance contracts, courts are not

17 to insert what has been omitted."]

18      Again the coverage provision states in its entirety as follows:

19      (i) **Penske Provides Coverage**. If Customer elects Penske Liability

20      Coverage, Penske agrees to provide liability protection for Customer

21      and any Authorized Operator, and no others, subject to any limitations

22      herein, in accordance with the standard provisions of a basic automobile

23      liability insurance policy as required in the jurisdiction in which the

24      Vehicle is operated, against liability for bodily injury, including death,

25      and property damage arising from use of Vehicle as permitted by the

26      Rental Agreement, *with limits as required by the state financial*

27      *responsibility law or other applicable statute*.

28 (Rental Agreement) [Emphasis added.]

**KNAPP,
PETERSEN
& CLARKE**

-16-

4227956.1   00100/10772

The reference to "standard provisions" of basic automobile liability insurance policy reasonably refers to the type of coverage to be provided but not the amount. It is the language "financial responsibility law or other statute" that governs the amount. Similarly, the "Customer Provides Coverage" option is also premised on the customer providing its own coverage in accordance with "the *standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which Vehicle is operated,*" (see UF 25) but instead of using vague descriptions of limits sets a specific $1 million dollar amount that would be compliant with Vehicle Code section 34631.5. Because "Penske Provides" and "Customer Provide" both use the term "standard provisions of a basic automobile policy" followed by other language specifying the limits, it is clear that "standard provisions" refers to the type coverage but not the limits of coverage.

Mutual intention of the parties at the time the contract is formed governs interpretation, with intent inferred, if possible, solely from the written provisions of the contract interpreted *as a whole*. Civ.Code § 1641; *AIU Ins. Co. v. Sup.Ct. (FMC Corp.)* 51 Cal.3d 807, 821-822 (1990) (emphasis added); *see also Waller v. Truck Ins. Exch., Inc*. 11 Cal.4th 1, 18 (1995). Reading the contract as a whole, i.e., Penske Provides Coverage coupled with Customer Provides Coverage, the words "standard provisions of basic automobile coverage" clearly means the type of coverage to be afforded; not the amount. The provision leaves unanswered the question of what is meant by the undefined phrase "financial responsibility law or other applicable statute."

Another tenet of insurance contract law as applied to insuring provisions is that "[a]ny provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.'" *Haynes v. Farmers Ins. Exchange* 32 Cal.4th 1198, 1204 (2004) citing *Steven v. Fidelity & Casualty Co*. 58 Cal.2d 862, 878 (1962). Penske's Provides Coverage provision, unlike its Customer Provides Coverage provision, is not clear and explicit in terms of limits of coverage. A

1   reasonable person who is a licensed motor carrier, renting a 26,000 lb. Freightliner,

2   would not objectively believe he was buying minimal 15/30 limits for  private

3   passenger automobile insurance as discussed in the following section.

4          In *Haynes*, the California Supreme Court held that an automobile liability

5   policy which purported to reduce the amount of liability coverage to permissive users

6   from the full policy limits down to the "minimum statutory amount" was

7   unenforceable because it was not prominently placed in the policy and the language

8   was unclear to an ordinary layperson. *Haynes, supra*, 32 Cal.4th at 1212.  The court

9   explained "any such limitation must be placed and printed so that it will attract the

10  reader's attention. Such a provision also must be stated precisely and understandably,

11  in words that are part of the working vocabulary of the average layperson." *Id.* at

12  1204 citing *National Auto. & Casualty Ins. Co. v. Stewart* 223 Cal.App.3d 452, 458

13  (1990) and *Ponder v. Blue Cross of Southern California* 145 Cal.App.3d 709, 719,

14  723 (1983).

15         Further it is a rule of contract interpretation that applicable state laws are read

16  into a contract by operation of law. *See Swenson v. File* 3 Cal.3d 389, 393 (1970).

17  The rental contract cannot be giving an interpretation that would be unlawful. L & L

18  is mandated to have coverage in excess of $750,000 under Vehicle Code section

19  34631.5 thus it would be unlawful for Penske to provide L & L with limits below

20  that amount. See also *Lumberman's Mut. Cas. Co. v. Wyman* 64 Cal.App.3d 252, 259

21  (1976) ["[A]n insurance company can limit the coverage of a policy issued by it as

22  long as such limitation conforms to the law and is not contrary to public policy."] As

23  the language Penske and Old Republic read into Penske Provides Coverage is not

24  "ascertainable and lawful" or "clear and explicit" it fails the basic rules of contract

25  interpretation set by Civil Code sections 1636 and 1638 and the Supreme Court in

26  *Haynes*.

27  **D.     L & L Had a Reasonable Expectation of Coverage**

28         The law on contract interpretation has long been accepted. Civil Code section

**KNAPP,
PETERSEN
& CLARKE**

-18-

1636 provides, "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Civ. Code § 1636. Even when the rental agreement is considered in a light most favorable to Penske, Penske Provides Coverage is ambiguous as to limits in that it is capable of two constructions. *Waller v. Truck Ins. Exchange, Inc. 11 Cal.4th* 1, 18 (1995) citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* 5 Cal.4th 854, 867 (1993) ["A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."] Penske's interpretation is not reasonable because it embraces an unlawful interpretation of the amount of coverage motor carriers must have for commercial vehicles. Even if Penske's interpretation is reasonable, the ambiguity or uncertainty must be resolved in L & L's favor. *Kazi v. State Farm Fire & Casualty Co.,* 24 Cal.4th 871, 879 (2001). This rule is created in order to protect the insured's reasonable expectation of coverage. *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 37 (1994); *State of California v. Continental Ins. Co.* 55 Cal.4th 186, 195 (2012).

An insured's objectively reasonable expectations are measured by what an insured would expect to be covered by the policy when the contract was made. See *Safeco Ins. Co. v. Robert S., supra,* 26 Cal.4th at 763; see also *Crane v. State Farm Fire & Cas. Co.* 5 Cal.3d 112, 115-116 (1971) ["If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates."].  A court may determine reasonable expectations as a matter of law. *Safeco Ins. Co. v. Robert S., supra,* 26 Cal.4th at 766 ["Moreover, an insured's objectively reasonable expectations are measured not by an insured's knowledge of the nuances of criminal law, but by what an insured would expect to be covered by the policy. The proper inquiry is: Would reasonable insureds expect their homeowners policy to protect them against liability for accidental injury or death occurring in their home? The

answer is yes."]

The average layperson is not likely to understand the term "financial responsibility law or other statute" means only 15/30 coverage especially in the absence of those limits.  A commercial motor carrier like L & L, in particular, when presented with effectively no choice but to accept Penske Provides Coverage, would expect coverage to be in the amount it was required to have as a licensed motor carrier. It would clearly be *unreasonable* for L & L to expect coverage in limits of 15/30 for a 26,000 pound Freightliner. This is especially so when Penske demanded for itself and the customer under "Customer Provides Coverage" limits of $1,000,000.

The Freightliner was not the described insured vehicle under the State Farm policy. L & L not knowing whether its State Farm policy would cover the Freightliner purchased the coverage offered by Penske. (See UF 16.)  The other option would require L & L contact its agent and request Penske be added as an insured under the policy on shortened notice. (See UF 24 and 25.) The other option would not have been a reasonable choice for a commercial entity that needed a truck for its immediate use. L & L's only reasonable option was to purchase the Penske insurance option which it reasonably and objectively believed would meet its minimum $750,000 limits and a motor carrier.

**E.   Penske Provides Coverage to L & L and Garcia Is Primary**

In the Rental Agreement "Penske warrants that, to the extent permitted by law, the liability coverage described in this paragraph is primary as respects any other insurance available to Customer or any Authorized Operator as defined in this Rental Agreement." (UF 23.) Since the bodily injury claim was made, Penske' agents have admitted Penske's insurance is primary and are defending L & L and Garcia. (UFs 37 and 40.) Notwithstanding the foregoing, Penske's counsel in the pre-motion meet and confer would not concede the primacy issues. Should Penske attempt to breach its "warranty" of primary coverage, California Insurance Code section 11580.9 (d) and

KNAPP,
PETERSEN
& CLARKE

4227956.1   00100/10772

1   relevant case law provides further clarity on the issue.

2   Section 11580.9 instructs what policies are primary and excess when applied

3   to a rented vehicle:

4   [W]here two or more policies affording valid and collectible liability

5   insurance apply to the same motor vehicle or vehicles in an occurrence

6   out of which a liability loss shall arise, it shall be conclusively presumed

7   that the insurance afforded by that policy in which the motor vehicle is

8   described or rated as an owned automobile shall be primary and the

9   insurance afforded by any other policy or policies shall be excess.

10   Cal.Ins. Code § 11580.9(d).

11   The opinion in *Grand Rent A Car Corp. v. 20th Century Ins. Co.* 25

12   Cal.App.4th 1242 (1994) is particularly applicable to the situation presented to this

13   Court. There, the court also analyzed priority of coverage, as determined by the

14   California legislature, between a car rental agency and the customer's own liability

15   insurers.

16   As a preliminary matter, the court determined that a car rental agreement

17   containing a provision indemnifying the renter from liability to third persons, up to a

18   specified limit, resulting from an accident which occurs while the rented vehicle is in

19   use, constituted an insurance policy. *Grand Rent A Car Corp. v. 20th Century Ins.*

20   *Co.* 25 Cal.App.4th 1242, 1251 (1994) citing *Hertz Corp. v. Home Ins. Co.* 14 Cal.

21   App.4th 1071,1077-1078 (1993). The court then interpreted section 11580.9 to

22   contain a conclusive presumption that the policy particularizing the vehicle was

23   primary. *Grand Rent a Car, supra*, 25 Cal.App.4th at 1253.

24   The court noted that unlike the policies before it which described only the

25   customer's owned automobiles, the rental agreement described the particular rented

26   car. The description included make, model, and color and license number. *Id*. at

27   1254.  Based on the rental agreement's particularizing of the vehicle in question, the

28   court concluded that the liability insurance promised the rental agreement was

KNAPP,
PETERSEN
& CLARKE

-21-

4227956.1   00100/10772

1    primary and the renter's other auto policy was excess under section 11580.9(d).  *Ibid*.

2          Here Penske expressly promised to insure L & L and its driver for their use of

3    the Freightliner specifically described in rental agreement. There is no dispute that

4    State Farm Policy did not describe or rate the Freightliner but instead described a

5    2001 GMC truck. (UF 1.)  Equally, there can be no dispute that the Rental

6    Agreement described the truck with particularity as a "26ft SAD MEDIUM VAN,"

7    height 13 feet, six inches, Max Payload 9,551 lbs., with license number 2360397.

8    (UF 14.) The insurance promised by Penske, with limits of $750,000, is primary.

9    **F.    The State Farm and Old Republic Policies Are Excess to Penske's Limits**

10       **of $750,000 on a Pro-Rata Basis**

11          L & L is the named insured under the State Farm Policy and is an insured and

12   additional insured by definition under the Old Republic Policy.

13          The Old Republic Policy's endorsement "Who Is an Insured" modifies the

14   definition of "insureds" found in its Business Auto Coverage Form to add:

15          Both lessees and rentees of covered "autos" as "insureds", but only to

16          the extent and for the limits of liability (insurance) agreed to under

17          contractual agreement with the Named Insured.

18   (UF 49.)

19          Similarly, the Old Republic Policy's Blanket Additional Insured Endorsement

20   make entities with which Penske agrees to provide coverage pursuant to contract

21   "insureds" and "additional insureds," respectively.

22          It is agreed that such insurance as is afforded by the policy shall be

23          provided under the policy provisions for additional insureds to any

24          person or organization for which the Named Insured has:

25          (1) agreed by written contract to provide the insurance stated in the policy

26   (UF 50.)

27          As to the limits, the additional insured endorsement provided limits greater

28   than that set forth in any Certificate of Insurance issued to such additional insured or

KNAPP,
PETERSEN
& CLARKE

-22-

"the limit(s) (limit(s) of insurance) set forth in any contractual agreement between the Named Insured and such additional insured" as long as with such limits do not exceed those provided by the Old Republic Policy. (UF 50.)

L & L and the Authorized Operator became additional insureds under the Old Republic policy by virtue of Penske's promise to provide them with coverage. The limits of coverage under the Rental Agreement were "as required by the state financial responsibility law or other applicable statute." (UF 22.) The Old Republic Policy, like the State Farm policy, contains a California Insurance Endorsement Motor Carrier of Property with combined single limits of $1,000,000 that provides:

> **This Endorsement shall be attached to and made a part of all policies insuring motor carriers of property required to obtain a permit pursuant to the Motor Carriers of Property Permit Act, commencing with California Vehicle Code section 34600. The purpose of this Endorsement is to assure compliance with the Act and related rules and regulations.**

(UF 53.)

Thus L & L and Garcia have $750,000 in coverage promised by Penske and in addition have $1,000,0000 limits under the Old Republic Policy by reason of its Who Is an Insured, Blanket Additional Insured, and Motor Carrier of Property endorsement. L & L and Garcia are also covered under the State Farm policy since the Freightliner qualifies as a temporary substitute vehicle.

Both the Old Republic Policy and the State Farm Policy contain other insurance language pro-rating their limits when other coverage is available. The Old Republic Policy provides in pertinent part:

> When this Coverage Form and any other Coverage Form or policy
> covers on the same basis, either excess or primary, we will pay only our
> share. Our share is the proportion that the Limit of Insurance of our
> Coverage Form bears to the total of the limits of all the Coverage Forms

1    and policies covering on the same basis.

2    (UF 47.)

3        The State Farm Policy provides in pertinent part:

4        We will pay the proportion of damages payable as excess that our

5        applicable limit bears to the sum of our applicable limit and the limits of

6        all other liability coverage that apply as excess coverage.

7    (UF 43.)

8        When multiple policies provide coverage for the same loss at the same level,

9    in this case on an excess basis, the general rule is to have the insurers contribute

10   equally on a pro rata basis. Discussing coverage among two primary insurers, as

11   opposed to excess, the court in *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28

12   Cal.4th 1059 (2002) noted: "the modern trend is to require equitable contributions on

13   a pro rata basis from all primary insurers regardless of the type of 'other insurance'

14   clause in their policies." *Id*. at 1080.

15                          **VI. CONCLUSION**

16       State Farm requests the Court grant summary judgment in its favor against

17   defendants declaring the rights and liabilities of the parties as follows:

18       1.    The insurance coverage Penske agreed to provide in the rental

19   agreement covers L & L and Garcia on a primary basis with limits of $750,000 as

20   required by California Vehicle Code § 3461.5.

21       2.    After the $750,000 in coverage that Penske Provides is exhausted, the

22   Old Republic and State Farm policy will insure any excess liability on a pro rata

23   basis. Because both the Old Republic and State Farm policies provide the same limits

24   of $1million, the policies will share on an equal basis any excess award, for an

25   insurable event, up to their policy limits.

26   ///

27   ///

28   ///

KNAPP,
PETERSEN
& CLARKE

-24-

4227956.1   00100/10772

1    3.    Costs of Suit shall be awarded to State Farm as the prevailing party.

2   Dated:  May 19, 2020                    KNAPP, PETERSEN & CLARKE

3

4                                          By:  /s/Robert D. Brugge

5                                               Robert D. Brugge
                                                Attorneys for Plaintiff
6                                               State Farm Mutual Automobile
                                                Insurance Company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

-25-